GILBERT et al. v. TEXAS CO. et al.

No. 4554.

Court of Civil Appeals of Texas. Beaumont.
March 4, 1949.

Rehearing Denied March 23, 1949.

Adams & Daughtry, of Beaumont, for appellants.

Wm. S. Clarke, of Houston, and Charles S. Pipkin, of Beaumont for appellees.

The appellants, F. N. Gilbert, Roy P. Nelson and B. T. McWhorter, sued appellees, The Texas Company, a corporation, and Roy Hayes in the District Court of Jefferson County. By their third amended original petition, out of the allegations of which this appeal has arisen, the appellants, Gilbert and Nelson, sought the sum of $2,-

908

*299.58* as damages suffered by them for loss of real estate brokers' commission and all three appellants sought $191,108.80 as damages suffered by them for breach of contract for the sale of real property. Such sum was to be divided one-half to Gilbert and Nelson and one-half to Mc-Whorter.

The appellees filed a joint original answer to such third amended original petition, which pleading contained 19 special exceptions to the pleading of the appellants. The answer also contained a general denial and numerous special denials and various other special defenses. In view of the disposition of the case made by the trial court, however, these other items and matters contained in the answer will not be considered on this appeal.

The trial court sustained each of the 19 special exceptions, which action constituted a finding by the trial court that the appellants wholly failed to allege in their third amended original petition any cause or causes of action against the appellees. The appellants, in open court, announced that they declined and refused to make any amendment to their said third amended original petition and the trial court thereupon entered judgment that the appellants' suit be dismissed. From such judgment the appellants have duly perfected their appeal to this court for review.

The cause, therefore, is before us on the pleadings of the parties. The pleading of the appellants is as follows:

"F. N. Gilbert et al vs. The Texas Company et al — In the District Court of Jefferson County, Texas 58th Judicial District.

"To The Said Honorable District Court:

"F. N. Gilbert and Roy P. Nelson, as original plaintiffs, and B. T. McWhorter intervening herein also as a plaintiff, all of whom are hereinafter called plaintiffs, with leave of the court first obtained file this their Third Amended Original Petition, in lieu of their original petition filed herein on February 22, 1946, and in lieu of their First Amended Original Petition filed herein on January 20, 1947, and in lieu of their Second Amended Original Petition filed herein on February 25, 1947, and complaining of The Texas Company, a corporation, and of Roy Hayes, hereinafter called defendants, for cause of action respectfully allege and show unto the court as follows:

"1. At all times hereinafter mentioned plaintiffs were and still are citizens of the State of Texas and residents of Jefferson County, Texas; that at the time the contract between plaintiffs, Gilbert and Nelson, and the defendant, The Texas Company, was made and executed, as hereinafter alleged, said plaintiffs were engaged in the business of real estate dealers, or realtors, as a partnership under the firm name of Gilbert-Nelson Company; and that each of said plaintiffs, Gilbert and Nelson, was a 'duly licensed real estate dealer or salesman at the time the hereinafter mentioned cause of action arose,' each of them having duly complied with all of the requirements of Article 6573a [Vernon's Ann.Civ.St.] relating to real estate dealers licenses."

"2. (a) At all times hereinafter mentioned, the defendant, The Texas Company, was a private corporation duly incorporated under the laws of the State of Delaware, was engaged in the business of producing, refining and selling petroleum and its products, and owned and operated a refinery in the City of Port Arthur, Jefferson County, Texas, where it has officers and agents upon whom service of citation may be legally made.

"(b) At all times hereinafter mentioned, the defendant Roy Hayes was and still is a citizen of the State of Texas and a resident of Jefferson County, Texas, and that he resides in the City of Port Arthur, in said County and State.

"3. On or about the 10th day of September, 1945, the defendant, The Texas Company, employed and dully appointed plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser, on stipulated terms and conditions as hereinafter stated, of certain tracts of land, as hereinafter described, then owned by The Texas Company; that all of the essentials of said contract of employment and appointment of plaintiffs, Gilbert and Nelson, as said defendant's agents to find a purchaser for said land, and also all of the essentials of the conditions and stipulations with which

such purchaser was required to comply, were in writing and were contained and shown in written letters duly signed by the respective parties and their duly authorized agents, the said letters in writing being duly delivered and received by said respective parties; and that the essentials of said contracts and stipulations were and are substantially as follows:

"(a) The said land or acreage to be sold, and for which said plaintiffs, Gilbert and Nelson, were employed to procure a purchaser, was described by the defendant, The Texas Company, in its letter of September 10, 1945, duly signed by E. W. Jones, Manager of the Sales Department, Real Estate Division, of said defendant, and duly authorized by said defendant to sell the said land on the terms herein stated, the said description and data for identifying the said acreage being of the tenor following:

"We appreciate your inquiry of September 4th with respect to the acreage owned by us on the new Memorial Highway (Beaumont-Port Arthur). Although you state we have land on the East side of the Highway we actually own three tracts here which for our file purpose we designate as:

| "Tract | Acreage Involved |
|--------|------------------|
| A | 39.8 |
| B | 42.6 |
| C | 43.6 |
| "Total | 126.0 |

"I believe Tract 'A' lies on the East side of the Highway with 'B' and 'C' on the West side. We do not have an extra map available here but Mr. Wallace of our Port Arthur Refinery upon request can supply you with one, which is designated as Map #15-49."

"Plaintiffs allege that the foregoing data and the reference to said Map #15-49 in the possession of the said Wallace, as stated in said letter, were sufficient to identify, without parol evidence, the said acreage thus offered for sale; and they further allege and show unto the court that it was understood and agreed by and among all the parties that the foregoing statement that the land to be sold contained one hundred twenty-six (126) acres was a mere guess or estimate, and that before the sale was completed it would be necessary to have said land surveyed and that both the commissions and the purchase price of the land would then be determined by the acreage shown by the survey (letter by Gilbert-Nelson Co. to Jones, October 1, 1945); that since the said date the defendant, The Texas Company has had a survey thereof made and the actual acreage contained in said tract is 114.979, and the proper descriptions and the acreage of said tracts, in accordance with said actual survey, are as set forth in the warranty deed from The Texas Company to Roy Hayes, a true copy of which is hereto attached, marked 'Exhibit A' and for all purposes made a part of this petition.

"(b) The defendant, The Texas Company, agreed in writing to pay plaintiffs, Gilbert and Nelson, five (5) per cent commission on the total sale or purchase price. (Said letter of September 10, 1945, signed by E. W. Jones, Manager.)

"(c) The price of said acreage to be paid by the purchaser was stipulated at Four Hundred ($400) an acre. Said letter of September 10, 1945, by Jones); and it was the mutual understanding and agreement that said Four Hundred Dollars ($400) an acre was to be an absolute price fixed by The Texas Company, and that defendant neither requested nor desired the plaintiffs, Gilbert and Nelson, to find a purchaser willing to pay more.

"(d) The duration of Gilbert's and Nelson's contract of agency was agreed and stipulated to be for the period from the date of the contract to November 1, 1945, and that the 'time for closing title' should be on or before said date. (Jone's letter, September 20, 1945).

"(e) It was mutually agreed that Gilbert's and Nelson's agency, during which they were to procure such purchaser, was not to be exclusive (Letter of September 10, 1945, by E. W. Jones); but it was reasonably and necessarily implied from the actual and express agreement with respect to the agency, as above stated, that if said plaintiffs procured a purchaser ready, able

and willing to purchase on the terms and conditions as herein stated, and if such offer of purchase by the one procured by said plaintiffs was approved by the defendant's Board of Directors (or as sometimes designated by defendant as its 'Executive Committee') prior to the time the defendant itself procured a purchaser, then immediately upon the approval of such Board of Directors, the contract should forthwith become absolute and binding upon both the purchaser procured by said plaintiffs and upon the defendant company, so that either one of said parties could equitably compel the other specifically to perform (E. W. Jone's letter to Roy P. Nelson, September 20, 1945).

"(f) It was further stipulated in writing that the purchaser should be required to pay 'an initial deposit on the contract of not less than ten per cent of the total purchase price.' (Jones's letter, September 20, 1945.)

"(g) It was further stipulated in writing that The Texas Company would not impose any restrictions or reservations with respect to oil, gas and mineral rights, but only certain reservations with respect to the said The Texas Company's retaining a strip of certain width along the pipe line easement. Jones's letter, September 20, 1945).

"(h) All the terms and stipulations with respect to the payment of said purchase price, consisting of the amount of cash payment and other and delayed payments to be made and the mortgages and liens to secure such payments, were all set forth and agreed upon in writing in said letters.

"(i) A further stipulation in writing was that the sales contract 'should be valid and enforceable one with respect to both parties' (Jones letter, September 20, 1945); and that the contract of sale and purchase should be binding on both parties, with no forfeiture clause allowing The Texas Company liquidated damages in the event of the purchaser's 'failure to complete the purchase contract.' (Jones's letter, October 3, 1945).

"(j) Though the original agency contract was not to be exclusive until favor-

able action of the Board of Directors of The Texas Company, as stated in the foregoing subsection (e) of this paragraph, yet on October 3, 1945, said defendant company, through its authorized agent, in writing changed or modified said original stipulation, which said modification was accepted and agreed to in writing by plaintiffs Gilbert and Nelson, whereby, for valuable consideration had and received by both parties to said agency contract, such as the agreement by said plaintiffs to become absolutely bound to purchase said property without a forfeiture clause and other considerations mentioned in the contract, it was mutually agreed that from and after said date of October 3, 1945, said defendant company would not make a sale of said property to any other prospective buyer, even though a better offer was made, except after reasonable notice to plaintiffs Gilbert and Nelson and giving said plaintiffs an opportunity to meet any other better offer that said defendant may have or might receive. (Jones's letter addressed to F. N. Gilbert, dated October 3, 1945; and letter in reply by Gilbert Nelson Company, addressed to E. W. Jones, Manager, Sales Department, Real Estate Division of The Texas Company, dated October 8, 1945).

"(k) A true copy of every and all of the letters above mentioned in this paragraph, both those written by plaintiffs and those written by the defendant, The Texas Company, were delivered in due course of mail respectively to the plaintiffs and to the said defendant, and every and all of them were and are of the tenor as set forth in 'Exhibit B' and made a part of this petition for all purposes; that the defendant, The Texas Company, is now in possession and control of the originals of the said letters written and mailed by the plaintiffs to the Texas Company and delivered to it in due course of mail as aforesaid; and plaintiffs hereby give notice to the defendant, The Texas Company, and its authorized agents to produce the originals of every and all of said letters thus written and mailed by the plaintiffs to The Texas Company or to its authorized agent, E. W. Jones, and that upon its failure to do so plaintiffs will offer in

evidence at the trial hereof secondary evidence or duplicate copies of said letters for proof of their contents.

"(l) The said letters written and sent in due course of mail by the said respective parties, and delivered to and received by the said respective parties and their authorized agents in due course of mail, show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between the plaintiffs and the defendant, The Texas Company, as specifically alleged and shown in this paragraph and every and all the foregoing subsections thereof, both with respect to the employment by The Texas Company of said plaintiffs Gilbert and Nelson, and with respect both to the sale and purchase of said real estate, and with respect to the promise and agreement upon which this action is brought, as required by Title 113A, Article 5673a, and every and all the sections thereof, of the Civil Statutes of the State of Texas.

"4. While the said sales contract between plaintiffs, Gilbert and Nelson, and the defendant The Texas Company was still in force, and before the termination of said period within which it was agreed by the said defendant the said plaintiffs would have the right to find a purchaser, said plaintiffs procured, and were the efficient cause of procuring, a purchaser of said acreage, to-wit, B. T. McWhorter; that the said McWhorter was ready, able and willing to purchase said property on the identical terms thus stipulated in writing by the defendant company, and for said purpose entered into a contract in writing with the defendant company binding him absolutely to pay the purchase price therefor as the said defendant company demanded, to wit, Four Hundred Dollars ($400) an acre for whatever amount of acreage a survey would disclose on the terms for cash and deferred payments, as shown by said written contract, and to comply with every and all of the terms and conditions required by the defendant company, as heretofore alleged.

5. Plaintiffs further show the court that subsequent to the procuring of the said McWhorter as such purchaser, and prior to the time the said McWhorter contract of purchase had been approved by the defendant company's Board of Directors or Executive Committee, plaintiffs Gilbert and Nelson desiring to acquire an interest in the said McWhorter contract to purchase, provided the defendant The Texas Company and its officers had no objection thereto, presented the matter to the said McWhorter and he agreed to convey to said plaintiffs such interest, provided the defendant company and its officers had no objection thereto; and there upon, to-wit, on or about, or shortly before October 1, 1945, the said B. T. McWhorter and the plaintiff F. N. Gilbert, acting for himself and on behalf of his said partner Nelson, fully disclosed to F. L. Wallace, one of the defendant company's officials in charge of the matter of the sale of said property, that said plaintiffs desired to acquire, and the said McWhorter was willing to convey to them, an interest in his said contract to purchase, and then and there asked the said Wallace whether or not The Texas Company would consent to said plaintiffs' acquiring such interest and whether or not said company would have any objection thereto; that thereupon the said Wallace told them that The Texas Company would not have any objection whatsoever but would give its consent to said plaintiffs' acquiring said interest from the said McWhorter; that thereafter, and acting upon the answer made by Wallace to said inquiry, the plaintiffs Gilbert and Nelson and the said McWhorter consummated their proposed agreement whereby the said Gilbert and Nelson acquired a one half undivided interest in and to said McWhorter contract to purchase.

"6. Plaintiffs further allege that they gave actual and express notice, as aforesaid, that the said Gilbert and Nelson were acquiring, or were about to acquire, said interest in the said McWhorter contract to F. L. Wallace, who was the superintendent of The Texas Company refinery at Port Arthur, Texas, and as such official had control and actual possession of all of its properties located in said vicinity; that the said Wallace was in full charge and control of all of said property of the defendant company and in control of and managing its said refinery; that thus the said Wallace,

in his capacity as aforesaid, was duly authorized by the defendant to manage and control the acreage involved herein, and was duly authorized to use his judgment and discretion as to whether the said land should be sold and to determine all the terms and conditions upon which such sale should be made, or, in the alternative that the said Wallace was thus duly authorized to use his judgment, in cooperation with one E. W. Jones, in determining all the terms and conditions upon which such sale should be made; that the said E. W. Jones was the manager of the defendant company's Sales Department of its Real Estate Division and was located at its office in the City of New York, in the State of New York and thus was in ultimate control of the sale of the properties herein involved, and was duly authorized to make the final decision on the terms and conditions of such sale; that the defendant company was and is a foreign corporation and conducts its business in the said City of Port Arthur by and through the said F. L. Wallace as its sole representative on the ground and incidentally through the said E. W. Jones as general manager of its said Sales Department, and that thereby the authority and powers of the said Wallace were coextensive with the powers and authority of the defendant company itself; that from necessity the said E. W. Jones delegated to the said Wallace the authority to discuss, negotiate and decide upon the terms and conditions of the said sale inasmuch as the said Wallace was in charge, control and possession of said property for the defendant company, and was the general manager of and represented the defendant company with respect to all of its properties in the City of Port Arthur, Jefferson County, Texas, and vicinity; and that said Jones referred plaintiffs to the said Wallace and requested that they confer with the said Wallace and negotiate with him for all of the terms of such purchase and sale and to be guided therein by said Wallace's instructions (Jones's letter, September 10, 1945); that in their negotiations for the purchase and sale of said land the plaintiffs complied with the directions and requests of the said Jones and discussed all of the details, terms and conditions of said contract of sale and purchase, including the said detail of disclosing to the said Wallace and giving him actual notice as such duly authorized agent of The Texas Company of Gilbert's and Nelson's intention to acquire the said interest in the said McWhorter contract.

"7. Plaintiffs further allege and show unto the court that by reason of all of the facts heretofore alleged the said Wallace was duly authorized to accept on behalf of The Texas Company the said disclosure and notice of Gilbert's and Nelson's acquiring an interest in the McWhorter contract and thereby to bind his principal. The Texas Company, by his assurance that The Texas Company would have no objection to the said Gilbert's and Nelson's acquiring such interest; and that such authority of the said Wallace to bind said defendant company as its agent was as follows:

"(a) That the said Wallace, in the circumstances aforesaid, had actual authority thus to bind his principal with respect to Gilbert's and Nelson's said notice and disclosure of their acquiring such interest, and for the further reason that it was part of the express and actual understanding and agreement with respect to the contract between Gilbert and Nelson and The Texas Company that the Texas Company desired to sell the said land on the fixed price basis of Four Hundred Dollars ($400) an acre, no more and no less, and The Texas Company did not desire or request them to use their efforts to find a purchaser who would pay more, but wanted plaintiffs to make as quick and prompt a sale of said land as possible without taking any more time than was absolutely necessary to make a sale thereof at the minimum price of Four Hundred Dollars ($400) an acre, and that thereby the legal duty of an agent in such circumstances to obtain the best price possible for his principal was not imposed upon the said Gilbert and Nelson, (Jones's letter, September 10, 1945; Jones's letter, November 1, 1945).

"(b) That the authority of the said Wallace to bind the defendant corporation as its agent with respect to such disclosure and notice was necessarily implied, incidental and inherent in and from the actual authority such as the defendant company

and its agent Jones had given said Wallace, reasonably resulting from all of the foregoing fact allegations.

"(c) In the alternative, that the said Wallace had apparent authority to bind the defendant company by accepting the said disclosure and notice of Gilbert's and Nelson's intention to acquire, and of their acquiring, an interest in said McWhorter contract, for that, by reason of all of the facts and circumstances heretofore alleged said plaintiffs were caused to believe, and did believe, that the said Wallace was authorized by defendant to hear and act upon the said notice and disclosure, and that one of ordinary prudence in the same or like conditions and circumstances, as heretofore alleged, would reasonably be caused to believe that the said Wallace had such authority, and that plaintiffs were thus reasonably caused to believe that the defendant company had given the said Wallace such authority, and were further caused to act upon their reasonable belief therein and to change their own previous position, in that, they were thereby caused to enter into the said contract with the said McWhorter, as heretofore alleged, and to contribute one-half of the initial payment of the purchase price, to wit, one-half of $4800.00, and were further proximately caused to become legally liable jointly with McWhorter to a suit against them by the defendant company for specific performance of said contract of purchase, and that for such reasons the defendant company is estopped to deny that the said Wallace had the apparent authority as alleged.

"8. After the said notice to The Texas Company and its approval through its agent Wallace of Gilbert's and Nelson's acquiring the said interest, the said McWhorter and Gilbert and Nelson entered into an agreement whereby Gilbert and Nelson acquired an undivided one-half interest in the said McWhorter contract, and that thereupon the said Gilbert, Nelson and McWhorter paid to the defendant company the sum of $4,800.00, that is, ten per cent of the estimated total purchase price as agreed upon; that thereafter and on receipt by the defendant company of the said initial payment of $4800.00, the said Jones, representing the defendant company, submitted the McWhorter offer to purchase and the terms thereof as stipulated in the contract to defendant company's 'Board of Directors' (or its 'Executive Committee'), and the said 'Board of Directors' or 'Executive Committee', on or before the 19th day of October, 1945, duly 'approved the sale of said land at the price and on the terms offered by said McWhorter' (Jones's letter, October 19, 1945), and thereby approved and accepted the said McWhorter's offer of purchase and the terms theretofore stipulated by defendant company, and thereby accepted the said B. T. McWhorter as the purchaser of its said lands; that thereupon, that is, upon the approval of said sale by said defendant company's Board of Directors or Executive Committee and the acceptance of said McWhorter as a purchaser, the said McWhorter contract to purchase immediately became a valid contract legally binding both with respect to B. T. McWhorter and Gilbert and Nelson on the one hand and The Texas Company on the other; and that thereby and as a necessary legal and equitable result of the facts heretofore alleged, either one of said parties, at their or its option, could have in equity compelled the other specifically to perform the said contract.

"9. Thereafter, to wit, on or about the 25th day of October, 1945, the defendant, through its authorized agent Jones, notified plaintiffs that the defendant company would not abide by its contract but would refuse to comply with its contractual obligation to deliver the said property to B. T. McWhorter, the purchaser procured by Gilbert and Nelson, and informed plaintiffs 'that the pending purchase offer submitted by your office for McWhorter's account cannot be accepted by us since the sale is going to be made through Senator Shiver's office,' and that thereby the defendant company wilfully, wrongfully and arbitrarily, and without legal excuse or justification, breached its said contract to sell and deliver said property to the said B. T. McWhorter; but on the contrary defendant company wrongfully and without legal justification or excuse thereafter sold and delivered said property to Roy Hayes, a client of Senator Allan Shivers, as shown by warranty deed from The Texas Company to Roy Hayes,

a true copy of which is hereto attached, marked 'Exhibit A' and made a part of this petition for description and identification of said land and for all other purposes (Jones's letter to Gilbert-Nelson Company, dated October 19, 1945; Jones's letter to Gilbert-Nelson Company, dated October 25, 1945; and Jones's letter to Roy P. Nelson, dated November 1, 1945).

"10. Plaintiffs further show unto the court and allege that on or about the 3rd of October, 1945, the defendant, The Texas Company, with the consent and approval of plaintiffs, changed or modified, in writing, the provision of the original contract relating to the exclusiveness of the agency of the plaintiffs, Gilbert and Nelson, whereby said defendant expressly promised and agreed in writing that from and after said date of October 3, 1945, and continuously to the date the Board of Directors of The Texas Company should approve the said McWhorter 'purchase offer', that it would not make a sale of said property to any other prospective buyer except after reasonable notice to plaintiffs of its intention so to do and that it would give plaintiffs an opportunity to meet any other offer that it might receive, meaning thereby that it would not consider any other offer of purchaser unless it was better than the McWhorter offer (Jones's letter to F. N. Gilbert, October 3, 1945); that during said time, that is, from October 3, 1945, up to the date defendant's Board of Directors approved the McWhorter contract to wit, on or before October 19, 1945, the defendant did not obtain a purchaser of said property on terms better than those of the McWhorter offer and contract; that on or before the said date of October 19, 1945, defendant's Board of Directors duly approved said McWhorter contract in all its terms and conditions, and that thereby and immediately the said McWhorter contract became legally binding on all parties and subject to specific enforcement by either party thereto, and that thereafter the defendant could not legally consider or accept any other offer of purchase whatsoever; that nevertheless the defendant, through its authorized agent Jones, falsely pretending that it was obligated to sell said property to Allan Shivers and his client, Hayes, on

the same terms upon which McWhorter agreed to purchase, and falsely asserting that such obligation was based on negotiations commenced by said Shivers and Hayes and terminated substantially a year prior to the date of the McWhorter contract, arbitrarily breached its McWhorter contract and sold and delivered said property to Hayes; that its pretended excuse for so doing was that it considered such to be the 'very ethical' course for it to take in the circumstances, where the facts were and are as follows: That at said time there were no negotiations pending for the purchase and sale of said land between Shivers and his client, Hayes, and The Texas Company, and had not been for a year or more prior thereto, all such prior negotiations having long since terminated; that on October 19, 1945, or soon thereafter, and after the Board of Directors had approved the McWhorter contract as aforesaid, the defendant Hayes requested the said McWhorter to help him (Hayes) obtain a contract to purchase said land from The Texas Company and that thereupon the said McWhorter informed the said Hayes that a binding contract for the sale, and purchase of said land had already been entered into by The Texas Company with others; that thereupon and notwithstanding actual knowledge by Hayes of such prior contract, said Hayes immediately employed Allan Shivers and urged him to use all his influence to induce The Texas Company to sell said property to him (Hayes) on the same terms upon which it was offering to sell to McWhorter; that in pursuance of Hayes' request the said Shivers thereupon made demand upon The Texas Company that it sell and deliver the said property to his client, Hayes; that the statement by said Jones in his letter addressed to Gilbert-Nelson Company, dated October 19, 1945, to the effect that inasmuch as the Board of Directors had waived reservation of all mineral rights in approving the McWhorter contract, he (Jones) 'felt that he was ethically bound to inform Senator Shivers that such was the company's intention and give him (Shivers) first opportunity to buy the property on the same terms as offered by McWhorter', is not true, but deliberately and wilfully false, the fact being that Shivers first made said de-

mand upon the defendant company, and said statement of Jones was and is a mere pretense and face-saving subterfuge in order to make it appear that the Texas Company was not knuckling under to Shivers (Jones's letter to Gilbert-Nelson Company, dated October 19, 1945) ; that by reason of all the foregoing fact allegations the defendant The Texas Company, through said authorized agent Jones, breached its said further agreement not to sell the property to any other prospective purchaser unless the offer of such purchaser was better than knowledge that said contract had been entered into and had become enforceable by that made by McWhorter, and even so that it would not sell to any other purchaser except 'after reasonable notice' to plaintiffs and giving them an opportunity to meet any such better offer, for that, the only notice given by the defendant to the plaintiffs was its arbitrary refusal to deliver the property to plaintiffs and its statement that it had decided to sell, and did sell, said property on the same terms and conditions to the said Hayes, client of Shivers (Jones's letter to Gilbert-Nelson Company, dated October 25, 1945).

"11. Plaintiffs further allege that immediately or shortly after the contract between The Texas Company, on the one hand, and the plaintiffs herein on the other, had reached the stage where it was enforceable by specific performance by either of said parties, as heretofore alleged, the defendant, Roy Hayes, acquired actual knowledge that said contract had been entered into and had become enforceable by either of the parties aforesaid, and had further actual knowledge that The Texas Company had agreed to pay plaintiffs herein, Gilbert and Nelson, a five per cent commission, and also had obtained actual knowledge that the said Gilbert and Nelson had purchased a one-half undivided interest in the said McWhorter contract with The Texas Company, and thus having such actual knowledge of substantially all the terms of said contract he (the said defendant Roy Hayes) thereupon maliciously, unlawfully and with the intent to injure plaintiffs herein and to benefit himself set out to conspire with and induce the defendant company to breach its said contract with plaintiffs, and in pursuance of such malicious and unlawful design employed as his agent the said Allan Shivers, a longtime friend and political protege of said defendant company, to intercede with said company in his (said Hayes') behalf, and authorized his said agent to make whatever promises necessary to induce the said company to deliver said property to Hayes, and the said Shivers, in pursuance of his authority as agent, assured The Texas Company that by selling said land to Hayes it would not have to pay any brokerage commission, and further promised that he (Shivers) would use all his personal and political influence to protect the defendant company against future legislation for any higher taxes on petroleum and its products, and, by such and similar promises, the said The Texas Company was induced to breach its said contract with plaintiffs and to sell and deliver said property to the said defendant Hayes; that both of said defendants owed plaintiffs a like and equal duty, that is, Hayes owed the duty not knowingly and maliciously to interfere with their said property and contract rights, and The Texas Company owed the duty not wrongfully to breach nor to be induced wrongfully to breach said contract; but that in violation of their said duties, both of said defendants connived, conspired and concerted their wrongful and malicious acts to bring about the breach of said contract; that it required the said wrongful acts of each of said defendants combined and operating concurrently, concertedly and jointly to produce the said tortious breach, and without the said wrongful acts of either one of said defendants said breach would not and could not have occurred; that said wrongful and tortious acts and conduct of both and each of said defendants operated all together jointly, concurrently, and concertedly, as aforesaid, proximately to cause the tortious breach of said contract, and that thereby both of said defendants are jointly liable to plaintiffs for their damages proximately resulting from such tortious breach.

"12. As a proximate result of the joint tortious acts and conduct of the said defendants, resulting proximately in the breach of said contract, plaintiffs, F. N. Gilbert and Roy P. Nelson, have sustained actual damages, in that, defendants have refused to pay and said plaintiffs have lost

the agreed five per cent commissions on the total purchase price of said property; that the total acreage, based upon survey made for said Hayes, was one hundred fourteen and nine hundred seventy-nine thousandths (114.979) acres, that the total purchase price at Four Hundred Dollars ($400) an acre was the sum of Forty-five Thousand Nine Hundred Ninety-one and 60/100 Dollars . ($45,991.60), and that consequently said plaintiffs' commissions, based upon said survey acreage, and agreed upon, would have been Two Thousand Two Hundred Ninety-nine and 58/100 Dollars ($2,-299.58), which said amount plaintiffs are entitled to recover of and from both of said defendants jointly, together with interest thereon at the rate of six per cent per annum from the date the commissions were due and payable, to wit, on and from the 19th day of October, 1945, until paid; that plaintiffs are entitled to recover six per cent interest as such on the total purchase price of said land from the date said commissions became due, as aforesaid, inasmuch as the said total purchase price of the property involved and the plaintiffs' five per cent commission are definite and liquidated amounts; or, in the alternative, and if not entitled to recover interest eo nomine, then plaintiffs are entitled to damages measured by six per cent of the said commissions from the date of the breach of said contract as aforesaid until paid; all to plaintiffs' actual damage, with respect to loss of commissions, in the sum of Two Thousand Two Hundred Ninety-nine and 58/100 Dollars ($2,299.58), with interest thereon at the rate of six per cent per annum from the date aforesaid until paid, or, in the alternative, for such six per cent thereof as damages as aforesaid, for all of which, with respect to said commissions, they sue.

"13. Also as a proximate result of the joint malicious and concerted tortious acts and conduct of the said defendants, resulting proximately in the breach of said contract, plaintiffs have suffered further actual damages of the nature and extent as follows:

"(a) Plaintiffs in contracting to purchase said property were acquiring same for the purposes hereinafter stated, with the actual knowledge of said defendants of said purposes, that is, to subdivide and develop said property in the usual and customary manner and to sell same in bare lots, and thus to dispose of said property to the public at a profit to themselves; that the defendant, The Texas Company, expressly agreed in its written contract for the sale of said property that it should be developed, used and disposed of for such residential purposes; that the defendant Hayes also had actual knowledge that the plaintiffs were acquiring said property for such purposes; that if said property had been delivered to plaintiffs in accordance with the contract as aforesaid they could and would have subdivided and developed said property in the manner aforesaid and would have sold and disposed of it within a reasonable time, or at such times as they thought best in the circumstances, at a probable and reasonable net profit to them, after deducting the amount of the purchase price and all other usual, customary and necessary expenses in developing and selling said property, including the reasonable value of the time given by plaintiffs in the conduct of such enterprise, of the sum of One Hundred Ninety One Thousand One Hundred Eight and 80/100 Dollars ($191,108.80) and that of said total net profit the plaintiffs Gilbert and Nelson were and are entitled to one-half thereof, or the sum of $95,554.40, and that the intervening plaintiff B. T. McWhorter is entitled to the other one-half thereof, or the sum of $95,554.40, for which they sue.

"That the said tracts of land when thus improved and sub-divided for the purpose of selling the bare lots without the improvements of homes and residences, etc., would produce and consist of the following blocks and lots of the respective reasonable market values set opposite each of such lots as follows:

"Tract 1E:

"Block 1:

| | |
|---|---|
| Lots 1 and 11 | $1200.00 each |
| Lots 2 through 10 | 900.00 each |
| Lots 12 through 17 | 625.00 each |
| Lots 18 and 19 | 675.00 each |
| Lots 20 through 25 | 625.00 each |

"Block 2:

| | |
|---|---|
| Lots 1 and 11 | $1200.00 each |
| Lots 2 through 10 | 900.00 each |
| Lot 12 | 625.00 |
| Lots 13 through 18 | 600.00 each |
| Lots 19 and 20 | 650.00 each |
| Lots 21 through 27 | 600.00 each |

"Block 3:

| | |
|---|---|
| Lots 1 and 11 | 1200.00 each |
| Lots 2 through 10 | 900.00 each |
| Lots 12 through 18 | 625.00 each |
| Lots 19 and 20 | 675.00 each |
| Lots 21 through 27 | 625.00 each |

"Block 4:

| | |
|---|---|
| Lots 1 and 11 | 1200.00 each |
| Lots 2 through 10 | 900.00 each |
| Lots 12 through 19 | 600.00 each |
| Lots 20 and 21 | 650.00 each |
| Lots 22 through 29 | 600.00 each |

"Block 5:

| | |
|---|---|
| Lots 1, 12, 13 and 24 | 675.00 each |
| Lots 2 through 11 | 600.00 each |
| Lots 14 through 23 | 600.00 each |

"Block 6:

| | |
|---|---|
| Lots 1, 12, 13 and 24 | 675.00 each |
| Lots 2 through 11 | 600.00 each |
| Lots 14 through 23 | 600.00 each |

"Block 7:

| | |
|---|---|
| Lots 1, 12, 13 and 24 | 675.00 each |
| Lots 2 through 11 | 600.00 each |
| Lots 14 through 23 | 600.00 each |

"Block 8:

| | |
|---|---|
| Lots 1, 12, 13 and 24 | 675.00 each |
| Lots 2 through 11 | 600.00 each |
| Lots 14 through 23 | 600.00 each |

"Block 9:

| | |
|---|---|
| Lots 1 and 25 | 700.00 each |
| Lots 2 through 24 | 600.00 each |

"Tract 1F:

"Block 1:

| | |
|---|---|
| Lots 1 and 5 | 1000.00 each |
| Lots 2, 3 and 4 | 900.00 each |
| Lots 6 through 11 | 600.00 each |
| Lots 12 and 13 | $650.00 each |
| Lots 14 through 19 | 600.00 each |

"Block 2:

| | |
|---|---|
| Lot 1 | 675.00 |
| Lots 2 and 3 | 600.00 each |
| Lots 4, 5 and 6 | 625.00 each |
| Lots 7, 8 and 9 | 700.00 each |
| Lot 10 | 625.00 |
| Lots 11, 12 and 13 | 600.00 each |
| Lot 14 | 650.00 |

"Block 3:

| | |
|---|---|
| Lot 1 | 900.00 |
| Lot 2 | 800.00 |
| Lot 3 | 750.00 |
| Lots 4 through 7 | 600.00 each |
| Lots 8 and 9 | 500.00 each |
| Lots 10 through 28 | 450.00 each |
| Lot 29 | 475.00 |
| Lot 30 | 500.00 |
| Lot 31 | 650.00 |

"Block 4:

| | |
|---|---|
| Lot 1 | 650.00 |
| Lots 2 through 10 | 600.00 each |
| Lots 11 through 14 | 650.00 each |
| Lots 15 through 24 | 600.00 each |
| Lot 25 | 650.00 |

"Block 5:

| | |
|---|---|
| Lots 1, 12, 13 and 24 | 675.00 each |
| Lots 2 through 11 | 600.00 each |
| Lots 14 through 23 | 600.00 each |

"Block 6:

| | |
|---|---|
| Lot 1 | 650.00 |
| Lots 2 through 6 | 600.00 each |
| Lots 7 through 14 | 550.00 each |
| Lots 15 and 16 | 600.00 each |
| Lots 17 and 18 | 500.00 each |
| Lot 19 | 600.00 |
| Lot 20 | 550.00 |
| Lots 21 through 29 | 500.00 each |
| Lots 30 through 33 | 525.00 each |
| Lot 34 | 550.00 |
| Lot 35 | 625.00 |

"Block 7:

| | |
|---|---|
| Lots 1 and 9 | 500.00 each |
| Lots 2 through 8 | 400.00 each |

"Block 8:

| | |
|---|---|
| Lot 1 | 650.00 |
| Lot 2 | 575.00 |
| Lot 3 | 550.00 |
| Lot 4 through 12 | 525.00 each |
| Lots 13 through 21 | 500.00 each |
| Lot 22 | 550.00 |

"Tract 1G:

"Block 1:

| | |
|---|---|
| Lot 1 | $600.00 |
| Lots 2 through 6 | 500.00 each |
| Lots 7 and 8 | 550.00 each |
| Lots 9, 10 and 11 | 600.00 each |
| Lot 12 | 625.00 |
| Lot 13 | 750.00 |

"Block 2:

| | |
|---|---|
| Lot 1 | 600.00 |
| Lots 2 through 6 | 500.00 each |
| Lots 7 and 8 | 550.00 each |
| Lots 9, 10, 11, 16, 17 and 18 | 600.00 each |
| Lots 12, and 15 | 625.00 each |
| Lot 13 | 750.00 |
| Lot 14 | 775.00 |
| Lots 19 and 20 | 550.00 each |
| Lots 21 through 25 | 500.00 each |
| Lot 26 | 600.00 |

"Block 3:

| | |
|---|---|
| Lots 1 and 14 | 600.00 each |
| Lots 2 through 5 | 500.00 each |
| Lots 7 and 8 | 675.00 each |
| Lots 9 through 13 | 500.00 each |

"Block 4:

| | |
|---|---|
| Lots 1 through 21 | 400.00 each |
| Lot 22 | 425.00 |
| Lots 23 and 24 | 450.00 each |
| Lots 25 through 40 | 400.00 each |
| Lots 41 and 42 | 450.00 each |
| Lot 43 | 550.00 |

"Block 5:

| | |
|---|---|
| Lot 1 | 600.00 |
| Lots 2 through 6 | 500.00 each |
| Lots 7, 8 and 9 | 675.00 each |
| Lot 10 | 700.00 |
| Lot 11 | 750.00 |
| Lot 12 | 525.00 |
| Lot 13 | 500.00 |
| Lot 14 | 525.00 |
| Lot 15 | 550.00 |
| Lots 16 and 17 | 500.00 each |

"Block 6:

| | |
|---|---|
| Lot 1 | 675.00 |
| Lots 2 through 9 | 575.00 each |
| Lot 10 | 675.00 |
| Lot 11 | 750.00 |
| Lots 12 through 19 | 675.00 each |
| Lot 20 | 750.00 |

"Block 7:

| | |
|---|---|
| Lot 1 | $700.00 |
| Lots 2 through 6 | 650.00 each |
| Lot 7 | 675.00 |
| Lots 8 and 9 | 650.00 each |
| Lot 10 | 800.00 |
| Lots 11 and 12 | 700.00 each |
| Lots 13 through 17 | 675.00 each |
| Lot 18 | 750.00 |

"Plaintiffs show unto the Court that by reason of the fact that it is inconvenient and impractical to attach copies of the plats of each of the foregoing subdivisions showing every and all of the respective blocks and lots above set forth, they have filed herewith true photostatic copies of each of said plats among, and to become a part of, the record papers of this cause, and have delivered to each of said defendants, The Texas Company and Roy Hayes and their attorneys of record true photostatic copies of each of said plats showing all the aforesaid blocks and lots and their locations as plaintiffs would have subdivided and improved said three tracts of land if the defendant, The Texas Company, had delivered to them said property in accordance with their contract.

"That the gross proceeds from the sale of the lots aforesaid would amount to the sum of Three Hundred Forty Thousand Three Hundred and no/100 Dollars ($340,-300.00).

"That the cost of the development of said tracts of land for the purpose of selling as bare lots, without the improvement of homes and residences, etc., would be as follows:

"Reasonable cost of the installation of water supply lines, $ 37,509.00

"Reasonable cost of cutting, grading and shelling streets for all of said tracts or parcels of land, 14,637.20

"Reasonable cost of the land, approximately, 46,000.00

"Reasonable value of the personal labor and services of plaintiffs that would have been necessary in developing and selling said prop-

erty and lots, if said property had been delivered to them in accordance with the aforesaid contract, or, in lieu of their rendering personal work and services therein, if they had employed experienced and expert developers and salesmen, which they could and would have done, would be fifteen (15) percent of the gross proceeds for development, in the sum of     51,045.00

making a total of     $149,191.20

"That the reasonable market value in Port Arthur, Jefferson County, Texas, at the time aforesaid, of every and all of the respective lots is and would be the respective amounts set opposite each of said lots.

"That with respect to the cost of developing said tracts of land, the respective items thereof as above set out, consisting of the installation of water supply lines, cutting, grading and shelling streets, cost of land personal services in developing and selling said land, were and are and represent the reasonable cost and the reasonable market value of said materials and services in and in the vicinity of said City of Port Arthur, in Jefferson County, Texas; and that the said fifteen (15) per cent of the gross proceeds for development represents the reasonable value and the reasonable market value of the personal services that would have been necessary for all of the plaintiffs to render in the development and sale of said property, if the property had been delivered to them, and that if plaintiffs so desired they could and would have obtained the services of experts for the development and sale of said property, and the said sum of Fifteen (15%) per cent of the gross proceeds for such development is the usual, customary and reasonable charge for such services and the reasonable market value thereof in Port Arthur, Jefferson County, Texas, and throughout said Jefferson County.

"That, therefore, the difference between the said gross proceeds of the sale lots and the cost of development, as above stated, would be and is the sum of One Hundred Ninety-one Thousand One Hundred Eight and 80/100 Dollars ($191,108.80), said amount being the net profit that plaintiffs could and would have made if the defendant, The Texas Company, had delivered to them the said property in accordance with its contract, as heretofore alleged; all to plaintiffs' actual damage in the said sum of One Hundred Ninety-one Thousand One Hundred Eight and 80/100 Dollars ($191,-108.80); and that of said total net profit the plaintiffs Gilbert and Nelson are entitled to one-half thereof, or the sum of Ninety-five Thousand Five Hundred Fifty-four and 40/100 Dollars ($95,554.40), and that the intervening plaintiff B. T. Mc-Whorter is entitled to the other one-half thereof, or the sum of Ninety-five Thousand Five Hundred Fifty-four and 40/100 Dollars ($95,554.40), for all of which said plaintiffs sue.

"(b) Plaintiffs further allege that since the date upon which the said purchase contract became complete and enforceable, as heretofore alleged, the reasonable market value of said property for residential purposes has substantially increased by reason of natural and other circumstances, such as materially improved prospective drainage; that at the time the said contract was entered into the reasonable market value of said property was approximately the sum of Forty-six Thousand Dollars ($46,000.00), but that, for the reasons aforesaid, the present reasonable market value thereof as a whole, without any improvement whatever, is now the sum of One Hundred Thirty-eight Thousand Dollars ($138,000.00); that by the express terms of said contract of purchase and sale between plaintiffs and The Texas Company, it was actually contemplated and understood by all the parties to said contract that plaintiffs, if they so desired, would have the right to sell the said property as a whole for residential purposes as aforesaid; and that if said property had been delivered to plaintiffs, in accordance with the contract, they could now sell said property as a whole, without subdivision or development, for residential purposes on the market, for the sum of One Hundred Thirty-eight Thousand Dollars ($138,000.00), the present reasonable mar-

ket value thereof; and thereby plaintiffs have sustained actual damage and loss in the difference between the said contractual purchase price and the present market value thereof, that is, the sum of Ninety-two Thousand Dollars ($92,000.00), and that the plaintiffs Gilbert and Nelson are entitled to one-half thereof, or the sum of Forty-six Thousand Dollars ($46,000.00), and the intervening plaintiff B. T. McWhorter is entitled to the other one-half thereof, or the sum of Forty-six Thousand Dollars ($46,000), for which they also sue.

"(c) At the time the plaintiffs entered into the said contract of purchase with the defendant The Texas Company, and for a long time prior thereto, they had been successfully and profitably engaged in the business of subdividing, developing, improving and selling similar tracts of land, similarly situated, for residential purposes in the City of Port Arthur, in Jefferson County, Texas, and from a combination of such actual experience and theoretical study of such business enterprises were and are thereby competent and capable of estimating and determining with reasonable accuracy and certainty the net profits that they probably could and would have made by subdividing, developing, and selling said property for residential purposes; that they were purchasing said property for such purposes and could and would have improved and developed and sold it, or could have sold it whole, if they desired, for the respective net profits as above alleged; that the defendant, The Texas Company, had actual and express contractual knowledge of all of said intentions and purposes of plaintiffs and that thereby every and all of the damages and losses above alleged as a proximate result of the wrongful breach of said contract were within the actual and necessary contemplation of said contracting defendant, The Texas Company, and were within both the actual and constructive contemplation of the wrongfully interfering defendant Hayes.

"14. Plaintiffs further show unto the Court and allege that after the date of the breach of said contract aforesaid, the defendant Roy Hayes sold or contracted to sell, or has become legally obligated and liable to convey to others, portions or in- terests in said land and lots involved, and has entered into with others legally binding contracts or mortgages, either conveying or relating to the conveyance or to the development of said property; that all of said persons, companies or corporations with whom said Hayes has entered into contracts with respect to said land, as aforesaid, were without either actual or constructive knowledge of the facts heretofore alleged constituting a cloud on or defect in the Hayes' title and for such reason they are all legally innocent purchasers; and that for the reasons aforesaid and as a proximate result of the wrongful acts of both of said defendants, plaintiffs have been deprived of their legal right of specific performance, and consequently must rely solely upon their remedy and cause of action for damages.

"Wherefore, said defendants having been duly cited and having duly answered, plaintiffs pray as follows:

"1. Upon final trial hereof plaintiffs. Gilbert and Nelson pray for the amount which represents their five per cent commissions on said sale, to wit, the sum of Two Thousand Two Hundred Ninety-nine and 58/100 Dollars ($2,299.58), as part of their actual damages proximately resulting from the wrongful and tortious acts, in accordance with the allegations of the foregoing petition, together with interest thereon at the rate of six per cent per annum from the 19th day of October, 1945, until paid; or, in the alternative for damages in. lieu of interest, calculated on the basis of six per cent from said date until the whole amount is paid, in accordance with the foregoing petition;

"2. The original plaintiffs, Gilbert and Nelson, and the intervening plaintiff, B. T. McWhorter, further pray for a joint judgment against both of said defendants for their further actual damages, proximately resulting from the said joint and tortious acts of both of said defendants, such as. and consisting of the loss of net profits and of the increased market value of said property from the date of said contract up to the trial hereof, in accordance with the foregoing allegations, to wit, for judgment in favor of said Gilbert and Nelson in the sum of Ninety-five Thousand Five Hun-.

dred Fifty-four and 40/100 Dollars ($95,-554.40); and also judgment in favor of the intervening plaintiff, B. T. McWhorter as his one-half of said net profits in the sum of Ninety-five Thousand Five Hundred Fifty-four and 40/100 Dollars ($95,554.40), in accordance with the foregoing petition.

"3. Plaintiff further pray for all costs of court and for such other relief, both general and special, to which they may be entitled at law or in equity.

> "Adams & Daughtry
> By M. G. Adams
> Attorneys for Plaintiffs
> 305 Goodhue Building,
> Beaumont, Texas."

There is attached to the petition as Exhibit "A" a copy of warranty deed from The Texas Company to Roy Hayes, dated December 26, 1945, reciting a consideration of $45,991.60 for three tracts of land out of range J., of the lands of Port Arthur Land Company Survey in Jefferson County, Texas.

The correspondence between the parties which constitutes Exhibit B, attached to and made a part of appellants' petition, is as follows:

"Exhibit B"

"Mr. F. L. Wallace, Superintendent
The Texas Company, P. A. Works
Port Arthur, Texas.
"Dear Mr. Wallace:

"I am writing you in regard to property owned by The Texas Company, lying east of the new Beaumont-Port Arthur Highway. This land runs from 26th Street to the Port Arthur Works-Port Neches Pipe Line levee.

"We have a client who is interested in purchasing this property for a subdivision and he has asked us to contact you to see if The Texas Company would be interested in disposing of same. He did not name a price but if your Company would consider selling, we will be glad to get an offer on any part or all of this acreage.

"Any information that you can give us on this will be greatly appreciated and if your Company has any other property in Port Arthur that they feel to be surplus real estate on their hands, we will be glad of the opportunity to dispose of it on the regular 5% commission basis.

> "Very truly yours,
> Gilbert-Nelson Co.
"FNG-cg          By          "

"September 4, 1945
"Mr. E. W. Jones,
The Texas Company
135 East 42nd Street,
New York, N.Y.
"Dear Sir:

"Some sixty days ago we had an inquiry regarding acreage owned by your Company on the new Memorial Highway (Beaumont to Port Arthur). This acreage is on the east side of this highway, running from 36th Street back to Port Arthur Works-Port Neches pipe line. I understand there is approximately 120 acres.

"On July 10th we contacted the Superintendent of your plant here, Mr. F. L. Wallace, regarding this acreage, making inquiry as to whether or not The Texas Company would consider selling. Today Mr. Wallace telephoned our office and informed us that The Texas Company would sell this acreage at $400.00 per acre. He advised us to write you for all details on this property.

"We are just wondering if you will give us sixty days option to dispose of this property at $400.00 per acre, also if the $400.00 includes our 5% commission, which is the usual commission paid real estate operators on such transactions. The reason we are asking for sixty days' protection is that we have two good prospects for the acreage, and, as you know, it probably would require that much time to negotiate the deal.

"If this kind of a proposition is satisfactory with you and your Company, will you kindly advise us by return mail as we feel certain we can dispose of the property at this figure. If this proposition is not in line with The Texas Company's policy of doing business, will you please outline The Texas Company's proposition or method in which they would prefer it to be handled.

"We give you as our references, both local banks in Port Arthur, also your Mr.

Frank L. Wallace, Superintendent of Port Arthur Works.

"Trusting that we will be favored with an early reply, we remain

"Very truly yours,
Gilbert-Nelson Co.
By              "

"September 10, 1945.

"Mr. F. N. Gilbert,
Gilbert-Nelson Co.,
439 Austin Avenue,
Port Arthur, Texas.

"Dear Mr. Gilbert:

"We appreciate your inquiry of September 4th with respect to the acreage owned by us on the new Memorial Highway (Beaumont Port Arthur). Although you state we have land on the East side of the Highway, we actually own three tracts here which for our file purpose we designate as:

| "Tract | Acreage Involved |
|--------|------------------|
| A | 39.8 |
| B | 42.6 |
| C | 43.6 |
| "Total | 126.0 |

"I believe Tract 'A' lies on the East side of the highway with 'B' and 'C' on the West side. We do not have an extra map available here but Mr. Wallace of our Port Arthur Refinery upon request can supply you with one, which is designated as May #15.49.

"It is our preference to sell all three of these tracts to one buyer.

"While the acreage involved is specified as 126 acres it has been recommended by Mr. Wallace that when and if we make a sale, we reserve out of all three tracts an area measuring 200' from the center line of the pipe line right-of-way and the reservoir levee in order to permit us at some future date to expand these facilities if we so desire and to have easy access to the right-of-way and levee at all times. This is not a serious deduction in the total acreage and the land involved, as you will see upon inspecting the premises, is perhaps the lowest lying and the most undesirable in the area. Mr. Wallace can clarify this reservation at the time you secure the property map from him.

"Also in making any sale, we would prefer to restrict the property for use for residential purposes only. However, if a buyer wished to keep the highway frontage available for commercial use to a depth of say 100', we probably would raise no objection to this so long as we could impose a restriction prohibiting the operation of any retail gasoline service station on the Highway at this point.

"One further reservation that we would like to make would permit us to retain all underlying gas, oil and mineral rights, but we would be willing to agree in doing so that we would forego any right to enter upon any portion of the premises for the purpose of drilling thereon. We understand that any developer wishing to finance residences on this tract through FHA mortgages would have difficulty with this reservation but we do not feel that the same objection will prevail with the average private or institutional mortgage lender.

"Our price is $400 per acre, out of which we would agree to pay the usual 5% brokerage commission. We would prefer to make a sale on an all-cash basis but would consider selling with a substantial cash payment of not less than ⅓ of the total purchase price at this time, we to take back a mortgage for the balance at 5% interest, due and payable within 5 years. While we would not agree to release from the lien of this mortgage on individual lots, we might consider three separate releases in the course of the 5 year mortgage period to cover respectively A, B and C Tracts, upon payment against the principal of the mortgage of a cash sum representing the same percentage of the original mortgage as released tract bears to the total acreage.

"Unfortunately, we are not in a position to give you a 60-day exclusive agency on this property for the reason that we have other active inquiries on it and in fairness to these interested buyers cannot preclude them from further consideration of the property through giving you an exclusive agency. However, we are willing within the next 60 days' time to make a sale at $400 per acre, which is our absolute mini-

mum price, provided your interested clients make an offer with respect to cash and mortgage terms which are satisfactory to us.

"This offer to sell is subject, however, to prior sale or withdrawal from the market without notice and is not in any sense to be considered by you as an exclusive sales contract on this property. We also reserve the right to change this price upon the expiration of 60 days from the date of this letter.

"We would appreciate your cooperation in disposing of this property on the above basis. You are quite free to discuss any proposed terms of sale with Mr. Wallace who we are sure will be helpful in guiding you with respect to our policy in matters of this sort. Any final purchase offer, however, should be directed to the writer, in line with Mr. Wallace's instructions to you.

"Thanking you for having written us, we are

Very truly yours,
E. W. Jones

"EWJ:egs
cc DWC-RDC-FLW (Pt. Arthur) "

"E. W. Jones
The Texas Company
135 East 42nd Street
New York, New York

"Referring your letter September 10, have firm offer for entire acreage with forfeit money deposited. Offer made in accordance your letter and conferences with Mr. Wallace. Letter follows setting out offer in full.

"Gilbert-Nelson Company
By: F. N. Gilbert"

"September 17, 1945

"Gilbert-Nelson Company,
Port Arthur, Texas.

"Gentlemen:

"In connection with your offering of the acreage owned by The Texas Company lying along the new Beaumont Highway on both sides, and lying southeasterly of The Texas Company pipe line right-of-way and designated by you as Tracts 'A', 'B' and 'C', I wish to make the following offer for the purchase of this acreage.

"I offer to purchase this acreage at a price of $400.00 per net acre, that is, less existing rights-of-way, roads and other easements, if any, and less a strip of 250 feet in width along the present Texas Company pipe line right-of-way, such strip to be measured from the Southeasterly line of such right-of-way, I would desire the right or easement, however, to drain across such 250 foot strip.

"The Deed conveying such property may contain the following provisions:

"(a) Said land shall not be used for the purpose of drilling, mining or otherwise exploring for oil, gas or other minerals.

"(b) Such land shall be used for residential purposes only, excepting that a strip of 200 feet in depth on both sides of the present Memorial Highway, known as Highway No. 69, may be used for commercial and business purposes, provided that no part shall be used for the purpose of operating what is generally known as a retail gasoline filling station.

"The owner will furnish Abstract or Abstracts to date, showing clear and merchantable title, free of all liens and encumbrances, and convey such property by General Warranty Deed, subject only to the above restrictive covenants.

"Taxes are to be prorated as of the date of closing sale, that is, the delivery of the Deed and the payment of the consideration.

"I shall have the option to either pay the total consideration in cash or to pay one-third down and the balance on or before five years after date; such deferred principal to bear interest at the rate of 5% per annum.

"In the event that deferred payment plan is used, the owner will agree to release any one or more of the Tracts designated 'A', 'B' and 'C' upon the payment of a proportionate part of the remaining unpaid purchase money, as the acreage to be released bears to the total acreage.

"I am herewith delivering you check in the sum of $1,000.00, which you may hold as earnest money, pending the acceptance of this offer; and if such offer is accepted and I refuse to proceed with the purchase of such property upon the terms herein

stated, then in such event, the $1,000.00 this day deposited shall be forfeited as agreed and liquidated damages. I wish to inform you that I am making this offer on my own behalf and on behalf of an associate.

"Very truly yours,
"B. T. McWhorter

"BTMc/dnl"

"September 18, 1945

"Mr. F. L. Wallace,
c/o The Texas Company
Port Arthur, Texas
"Dear Mr. Wallace:

"We are enclosing herewith copy of our letter to Mr. Jones and copy of the offer received from our client on the land we discussed with you.

"We wish to thank you for your cooperation and the help you have given us in this matter and will keep in touch with you on further developments.

"Very truly yours,
"Gilbert-Nelson Company

"RPN/LS"

"September 18, 1945

"Mr. E. W. Jones,
Texas Company,
135 E. 4nd St.,
New York, N. Y.
"Dear Mr. Jones:

"In accordance with our telegram of the 15th, we are enclosing herewith a letter from Mr. B. T. McWhorter which is self explanatory covering the condition of the offer we received from him on the land referred to in your letter of September 10th. He has deposited one thousand dollars earnest money and we are holding same pending your instructions.

"We believe this offer is in line with your letter and the information we obtained through Mr. Wallace's office.

"We appreciate the opportunity of handling this for you and should you see fit to accept this offer, we would like to hear from you as early as possible, so that we may advise our client.

"Yours very truly,
"Gilbert-Nelson Co.

"cc: To: Mr. F. L. Wallace"

"September 20th, 1945
via AIR MAIL
"Mr. Roy P. Nelson
Gilbert-Nelson Company
439 Austin Avenue
Port Arthur, Texas.

"Real Estate-Port Arthur, Texas
Beaumont-Port Arthur Highway
Tracts 'A' 'B' and 'C'

"Dear Mr. Nelson:

"We have received your September 18th (air mail) letter enclosing an offer dated September 17th from Mr. B. T. McWhorter on the subject lands.

"There are a number of questions in connection with this proposal which must be cleared with Mr. Wallace and we have written him today regarding these matters and he will contact you in connection with them if he is unable to give us the answers directly.

"There are several points, however, in connection with Mr. McWhorter's offer which we would request you to clarify as follows:

"#1) May we infer from paragraph marked (a) of Mr. McWhorter's letter, the original of which incidentally we are returning to you as we have made a copy of it, that Mr. McWhorter is willing to accept a conveyance from us in which we reserve all the gas, oil and mineral rights but waive any right to enter any portion of the premises for the purpose of drilling. This paragraph (a) is not clear to us and might be understood to mean that Mr. McWhorter expected a Warranty Deed from us with no reservation except that he and his successors would refrain from drilling, mining and otherwise exploring for oil, gas and minerals. Please clear this question up.

"#2) You speak of our retaining a 250' wide strip along the pipe line easement. Our records show that we had only intended to retain 200' and we are wondering whether Mr. McWhorter wants us to retain 250' or whether he would be willing to buy all lands except that covered by a 200' strip.

"#3) His letter specifies that he shall have the option either to pay the total

consideration in cash or one-third down and the balance in 5 years. Please ask him to determine definitely which program he wants as we shall have to ask our Directors to enact a resolution authorizing the sale in which definite sales terms are recited and we do not care to have it optional on the purchaser's part for this reason. Obviously, he can elect the one-third cash payment and under the terms prescribed in my September 10th letter pay off any balance covered by a mortgage as fast as he wants to within the five year period, so this will probably be his choice.

"#4) You specify no time for closing of title. We feel that a definite date should be set and would suggest on or before November 1, 1945.

"#5) We do not like Mr. McWhorter's suggestion that in the event his final offer is accepted by us he shall pay $1,000 as a binder on a purchase contract and then have the option to withdraw from this purchase upon forfeiting this $1,000 as liquidated damages. This amounts to no more than having the property tied up for the contract period, merely by paying us the sum of $1,000 and thereby precluding us from dealing with anyone else on this parcel. We are definitely going to sell it and if Mr. McWhorter is the purchaser we feel that we should jointly enter into a binding contract on both parties, that his initial deposit on the contract should not be less than 10% of the total purchase price and that the sales contract should be a valid and enforceable one with respect to both parties. From this you may judge that we are not interested in tying this property up for an indefinite period which may run into several weeks or even months for the sum of $1,000.

"If you will clear these questions up with McWhorter and let us have a definite, concrete, new offer from him which will clarify these points, we shall be glad to present the proposal to our Board of Directors for their consideration.

"Very truly yours,
E. W. Jones

"EWJ :egs
Att."

"September 22, 1945
"Mr. F. L. Wallace
% The Texas Company
Port Arthur, Texas

"Dear Mr. Wallace:

"We have today received a letter from Mr. E. W. Jones dated September 20, in regard to the real estate on the Beaumont-Port Arthur Highway, a copy of which was probably furnished you.

"I know you are very busy with other matters at the present time, otherwise I would have called you over the phone.

"Mr. McWhorter is ready to go ahead with the contract as mentioned in Mr. Jones' letter of September 20, but would like to discuss with you one of the items mentioned in Mr. Jones' letter, which I think can be cleared up satisfactorily.

"I would appreciate your calling me when you would be in position to discuss this with us, and assure you that any time convenient to you will be satisfactory.

"Very truly yours,
F. N. Gilbert.

"FNG/dnl"

"September 22, 1945
"Mr. E. W. Jones, Manager
Sales Department
The Texas Company
145 East 42nd Street
New York 17, New York.

"In Re: Real Estate-Port Arthur, Texas
Beaumont-Port Arthur Highway
Tracts 'A', 'B' and 'C'

"Dear Mr. Jones:

"We have received your letter of September 20, and are holding a conference with Mr. Wallace in regard to one or two points which we think can be promptly cleared up, and will advise you just as soon as we have talked with Mr. Wallace.

"Very truly yours,
Gilbert-Nelson Company
By _____
F. N. Gilbert

"FNG/dnl"

"September 25, 1945

"Mr. E. W. Jones, Manager
Sales Department
The Texas Company
145 East 42nd Street
New York 17, New York.

"Real Estate-Port Arthur, Texas
Beaumont-Port·Arthur Highway
Tracts 'A', 'B' and 'C'

"Dear Mr. Jones:

"Referring to our letter of September 22nd wherein we advised that our client and the writer had an appointment with your Mr. F. L. Wallace to endeavor to clear up two points brought out in your letter of September 20th:

"We have been unable to secure this conference with Mr. Wallace due to conditions at your plant at the present, making it impossible to contact Mr. Wallace at his office. However, we no doubt will be able to get in touch with him within the next few days and will write you immediately following our conversation with him.

"If the points in question can be ironed out, we, in accordance with your instructions, will send you Cashier's check for the amount specified in your letter of the 20th.

"Trusting this meets with your approval, we remain

"Very truly yours,
Gilbert-Nelson Company
By

"FNG-eg

FLW copy 9–27–45"

"September 28, 1945

"Gilbert-Nelson Company
Port Arthur, Texas

"Gentlemen:

"Referring to my letter of September 17, offering to purchase the acreage from The Texas Company, designated as Tracts 'A', 'B' and 'C', along the Beaumont Highway, and Mr. Jones' letter of September 20, in reply to your letter of September 18, enclosing a copy of my letter.

"I will discuss in their order the points raised by Mr. Jones:

"#1) Mineral Rights. It is generally agreed that a reservation of all oil, gas and other mineral rights would materially interfere with the development of this property for residential purposes and while this has been done in other areas by private financing, I do not recall any instances in the Port Arthur area where minerals have been reserved, and for this further reason, the development of this acreage would be handicapped by competition of all surrounding areas which have no mineral reservations whatever. While I am not at all interested in mineral rights and have no idea of any such development, it is very desirable that the acreage be on an equality with other acreage in this respect. It is hoped that the acreage can be developed by private financing; however, the F.H.A. Plan may be used, and such financing cannot be obtained with the mineral reservation. I consider that since the Texas Company will retain title to the adjacent acreage across the pipe line right-of-way, that the inclusion in the Deed of the restriction referred to in my letter of September 17 would protect them insofar as minerals might be concerned; that is, a restriction in the Deed providing that 'The acreage shall not be developed or explored for oil, gas, or other minerals.' This provision, I believe, will be satisfactory to any prospective finance company. I trust that this clears up this point.

"#2) 200 Ft. strip. It was considered that a strip of 200 feet in width would not include the present borrow pit now along a portion of the pipe line right-of-way, and that this might possibly be 250' from the pipe line right-of-way. I understand now from the Texas Company Engineers that the 200 feet will include this borrow pit, and therefore a reservation of a strip of 200 feet in width is entirely satisfactory.

"#3) Payment Option. The amortized method of payment, that is one-third cash and the balance payable over a period of five years, will be satisfactory, such deferred payments to bear interest at the rate of 5% per annum. However, I would desire the privilege of paying the entire principal or any part thereof prior to maturity, as outlined in Mr. Jones' letter of September 20.

"#4) Closing. I will be ready to close the sale within five (5) days after I am fur-

nished with the Abstracts of Title, showing clear and merchantable title.

"#5) Earnest money. I enclosed check in the sum of $1,000.00 in order to show good faith in connection with the offering; however, having confidence in The Texas Company I do not hesitate to herewith enclose check for the additional sum of $3,800.00, which makes a total of $4,800.00, or 10% of the total consideration, the estimated number of acres being 120.

"I believe this will clear up all matters you have called to my attention.

"Very truly yours,
B. T. McWhorter

"BTMc/dnl
Encl."

"October 1, 1945
"Real Estate-Port Arthur, Texas
Beaumont-Port Arthur Highway
Tracts 'A', 'B' and 'C'

"Mr. E. W. Jones, Manager
Sales Department
Texas Company
135 East 42nd Street
New York 17, N. Y.

"Dear Mr. Jones:

"We had been unable to confer with Mr. Wallace until today, on the subject property, but have just returned from a conference with him.

"We have gone over the correspondence with Mr. Wallace, including Mr. McWhorter's letter of September 28, enclosed herewith, discussing the various points brought out in your letter of September 20. Mr. Wallace expressed himself as believing all of the points had been cleared up insofar as his office is concerned.

"As above mentioned, you will find enclosed herewith Mr. McWhorter's letter to us, also a Cashier's check for $4,800.00 made payable to The Texas Company, covering 10% of the purchase price on the three tracts of land in question. This we believe to be in accordance with your letter of September 20.

"Mr. Wallace suggested that this deal be on a surveyed acreage basis and that The Texas Company's Engineers make the survey so they may put in concrete corner posts for boundary lines. This is all very agreeable with Mr. McWhorter and we trust that the manner in which he would like to handle the mineral rights is satisfactory with you. You will notice other points brought out in Mr. McWhorter's letter do not conflict with any request made in your letter of September 20.

"If this transaction is all right, I am sure you will want your attorneys to draw up the papers and notify us when you are ready to consummate the deal.

"Thanking you for the cooperation you have given us in this matter, and trusting we may hear from you in the very near future, we remain

"Very truly yours,
Gilbert-Nelson Co.
By F. N. Gilbert

"FNG:eg
Copy—F.L.W.
BTM"

"The First National Bank of Port Arthur
"Reserve District No 11
"Port Arthur, Texas
Sept 29, 1945 No. C 15375

"Pay to the
Order of—The Texas Company—$4,800.00
1st Nat'l Bank
Port Arthur        $4,800 & 00 Cts.
"Cashier's Check
Earnest Money for acreage
as per letter BTMc

"Asst. Cashier."

"October 3, 1945
via Air Mail

"Mr. F. N. Gilbert
Gilbert-Nelson Co.
439 Austin Avenue
Port Arthur, Texas.

"Real Estate—Pt. Arthur, Texas
Beaumont-Pt. Arthur Highway
Tracts 'A', 'B' and 'C'

"Dear Mr. Gilbert:

"We have received your October 1st letter giving further details in connection with Mr. McWhorter's purchase offer on this property together with the Cashier's check in the sum of $4,800 to apply as initial payment on any sales agreement which we may subsequently accept.

"It now seems that we have a sufficiently clear picture of Mr. McWhorter's proposal through our exchange of correspondence to permit us to present his purchase offer to our Board of Directors for their consideration, which we will do at the earliest possible moment. It is improbable that we will be able to give you an answer on this offer until about the 20th inst. In the meantime, however, you may be sure that we will not make a sale of this property to any other prospective buyer except after reasonable notice to you of our intention so to do and giving you an opportunity to meet any other offer which we may have.

"As I review the proposition, the only thing which is not entirely clear to me is the question raised under paragraph #5 of my September 20th letter to Mr. Nelson. From your October 1st letter I am assuming that Mr. McWhorter stands ready to enter into a valid and binding purchase contract with us, in which there will be no forfeiture clause allowing us liquidated damages in the event of his failure to complete the purchase contract and it is on this basis that we are asking our Directors to consider his proposal.

"Thanking you for your continued interest in this matter and assuring you of an answer from us at the earliest possible moment, I am

"Very truly yours,
E. W. Jones

"EWJ:egs"

"October 8, 1945.

"Mr. E. W. Jones, Manager
Sales Dept., Real Estate Div.,
The Texas Company
135 East 42nd Street
New York 17, N. Y.

   "Real Estate-Pt. Arthur, Texas
   Beaumont-Pt. Arthur Highway
   Tracts 'A', 'B' and 'C'

"Dear Mr. Jones:

"We have received your letter of October 3rd and have gone over the contents thereof with Mr. McWhorter, and it is satisfactory with him.

"You are right in assuming that Mr. McWhorter stands ready to enter into a

valid and binding purchase contract, as he is ready to finish the deal when it is possible for you to do so.

"Thanking you, we remain
"Very truly yours,
Gilbert-Nelson Co.
By

"RPN–eg

"Via Air Mail   "October 19, 1945.

"Gilbert-Nelson Co.
439 Austin Ave
Port Arthur, Texas

   "Real Estate-Port Arthur, Texas
   Beaumont-Port Arthur Highway
   Tracts 'A', 'B' and 'C'

"Gentlemen:

"As promised in our October 3rd letter, we are writing you at the earliest possible moment with respect to Mr. McWhorter's offer on this property.

"Our Executive Committee has now approved the sale of these lands at the price and on the terms offered by Mr. McWhorter and has further stipulated that, in effecting the sale, it will be unnecessary for us to impose any restrictions or reservations with respect to the oil, gas and mineral rights. This last stipulation places us in somewhat of an embarrassing position in that earlier this year Senator Allen Shivars, whom you probably know, had attempted to purchase this property from us but the transaction was never concluded because we insisted on a mineral reservation. Now we feel that we are ethically bound, in view of our willingness to waive this particular condition, to inform Senator Shivars of our intention and give him first opportunity to buy the property on the same terms as offered by Mr. McWhorter. We have done this today by wire via our Houston Office setting a time limit of October 24th for his acceptance or rejection.

"We expect word from him by that date at the latest and as soon as word is received you may be sure that we will at once advise you by wire respect to Mr. McWhorter's proposal.

"Thanking you for the continued indulgence both of your client and your office in

this matter, and feeling sure that you can appreciate the fairness of this handling, I am

"Very truly yours,
E. W. Jones

"EWJ:pd"

"Via Air Mail        "October 25, 1945.
"Gilbert-Nelson Co.
439 Austin Ave
Port Arthur, Texas
"Real Estate: Port Arthur, Texas
Beaumont-Pt. Arthur Highway
Tracts 'A', 'B' and 'C'.

"Gentlemen:

"As outlined in our October 19th letter, when our Executive Committee approved the sale of these lands and decided that we would not insist upon imposing any restrictions or reservations with respect to the oil, gasoline and mineral rights, we felt it incumbent upon us to so inform Senator Allen Shivers of our intention to make a sale on this basis in view of the fact that only the question of mineral reservations precluded our making the sale to him earlier this year on the same price basis as has been offered by Mr. McWhorter.

"We accordingly took the very ethical step of informing Senator Shivers of our intention and now have his definite offer to purchase under these changed conditions. We have no doubt but what you and Mr. McWhorter will agree that this handling of the sale of this property is the only fair and ethical thing for us to do.

"Accordingly we must now inform you that the pending purchase offer submitted by your office for Mr. McWhorter's account cannot be accepted by us since the sale is going to be made through Senator Shivers' office. We are returning, for your disposition, the $4,800 Cashier's check #C 15375, drawn on the First National Bank of Port Arthur.

"With the definite feeling that you will concur in the handling of this particular problem, we are

"Very truly yours,
E. W. Jones

"EWJ:PD"

"October 30, 1945

"Mr. E. W. Jones
Dear Sir:
"In Re: Real Estate
Port Arthur-Beaumont Highway
Tracts 'A,' 'B' and 'C'

"We were very much disappointed in the contents of your letter which we received today, as it so drastically contradicted your letter of October 3rd.

"Inasmuch as we have met your requirements in furnishing you a purchaser, Mr. B. T. McWhorter, who is ready and willing to buy the subject property under the conditions approved by your Board of Directors, we have earned our commission and will appreciate your forwarding us a check for $2,400.00 by return mail."

"Via Air Mail        "November 1, 1945.

"Mr. Roy P. Nelson
Gilbert-Nelson Co.
439 Austin Street
Port Arthur, Texas.
"Real Estate: Port Arthur, Texas
Beaumont-Port Arthur Highway
Tracts 'A', 'B' and 'C'

"Dear Mr. Nelson:

"We have your letter of October 30th indicating that we have drastically contradicted statements contained in our letter of October 3rd, and claiming a $2,400 commission in connection with the sale of this property.

"We fully appreciate your disappointment in our rejection of Mr. McWhorter's offer. However, we do not share your viewpoint that, in effecting the sale to another buyer, we have in any way violated the statements made in our October 3rd letter.

"Certainly the second paragraph of this October 3rd letter clearly states that Mr. McWhorter's purchase offer had to have the approval of our Board of Directors before we could accept it. Obviously until it was accepted there could be no obligation on our part for any commission. Furthermore, we have not violated our promise to you to give you an opportunity to meet any other offer which we might receive on this

property. The property was sold at $400 per acre and no attempt was made by us to play one buyer against another in order to secure a higher price. We feel we have been eminently fair in our handling of this transaction and the sale to Senator Shivers' client has been made because he was the first one making an offer on this property on terms which our Board of Directors were finally willing to accept. We have explained all this in our exchange of cor-respondence and believe that anyone taking a disinterested viewpoint would agree that our handling has been most ethical.

"As the writer well knows, from his many years of experience as an active real estate broker prior to his becoming affiliated with The Texas Company, situations of this sort, while unfortunate for the broker whose sale fails to be consummated, are certainly not unusual. It is part of the business and we do not feel under the circumstances that we have any obligation in connection with a commission to your office.

"Very truly yours,
E. W. Jones"

"EWJ:Pd"

The exceptions of the appellees are as follows:

1. "These defendants specially except to plaintiffs' third amended original petition and say that same is insufficient in law to state a cause of action against these defendants for the recovery of the commission for the sale of real estate sued for therein for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by The Texas Company of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, do not, as a matter of law, constitute such a promise and agree-ment or contract to pay a commission for the sale of real estate as is required by title 113A, article 6573a, Section 22, R.C.S. Texas, 1925, in that such instruments are too uncertain, ambiguous and indefinite to designate the land allegedly to be sold, the terms and conditions upon which the land was allegedly to be sold, the terms and conditions upon which the commission was to be paid, and do not, as a matter of law, contain all the necessary essentials of such a promise or agreement to pay commissions for the sale of real estate as required by said section 22 of article 6573a;

"(b) The plaintiffs' said petition, together with the instruments attached thereto as exhibit 'B' and made a part of said petition for all purposes, shows conclusively that the approval of the Board of Directors of The Texas Company of the 'McWhorter offer', the execution of a formal contract of sale containing in one writing all the terms, conditions and details of the contemplated sale, and the consummation of said contract of sale by the payment of the consideration for the sale of the land were conditions imposed by defendant, The Texas Company, as necessary prerequisites to the obligation of defendant, The Texas Company to pay the commission for the sale of real estate as sued for by plaintiffs, and said petition also shows upon its face that said prerequisite conditions were not satisfied or performed; therefore, as a matter of law, defendant, The Texas Company, was not and is not obligated to pay the commission for the sale of real estate as sued for by plaintiffs;

"(c) The instruments attached to said petition as exhibit 'B' and made a part thereof for all purposes, and which are alleged in plaintiffs' said petition to constitute in writing the complete contract obligating defendant, The Texas Company, to pay plaintiffs, Gilbert and Nelson, a commission for the sale of real estate, do not, as a matter of law, identify the land for which said plaintiffs were, as alleged by them, employed to find a purchaser; therefore, such instruments are not enforceable as a promise or agreement in writing, as is required by Title 113A, article 6573a, Sec-

tion 22, R.C.S.Texas, 1925, to be the basis for this suit for the recovery of a commission for the sale of real estate;

"(d) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are alleged and admitted in said petition to constitute in writing the complete contract obligating defendant, The Texas Company, to pay plaintiffs, Gilbert and Nelson, a commission for the sale of real estate, show, as a matter of law, that there was not legal consideration to support said alleged contract, and, therefore, such alleged contract is, as a matter of law, unenforceable and cannot be the basis for the recovery of a commission for the sale of real estate as sued for in said petition;

"(e) The plaintiffs' said petition shows upon its face that plaintiffs, Gilbert and Nelson, while they were, as alleged by them, acting as agents of defendant, The Texas Company, to find and procure a prospective purchaser for land belonging to defendant, The Texas Company, and therefore, in violation of the duty imposed by law in such cases to use their best efforts in behalf of their alleged principal, The Texas Company, and not to become interested as principals in the purchase of such land, by an alleged agreement with plaintiff, McWhorter, the alleged prospective buyer, became interested as principals in the prospective purchase of said land without having made, in writing, full disclosure to defendant, The Texas Company, or its authorized agent, of all the facts in that regard, and without having received the consent or approval in writing of defendant or its authorized agent, as is required by article 6573a, Section 22, R.C.S. Texas, 1925, to change, alter or amend the details and conditions of the alleged written contract of agency. Therefore, plaintiffs, Gilbert and Nelson, are not entitled, as a matter of law, to sue for and recover the commission for the sale of real estate sued for in said petition;

"(f) The plaintiffs' said petition shows upon its face that plaintiffs, Gilbert and Nelson, while they were, as alleged by them, acting as agents of defendant, The Texas Company, to find and procure a prospective purchaser for lands belonging to defendant, The Texas Company, and, therefore, in violation of the duty imposed upon them by law in such cases to use their best efforts in behalf of their alleged principal, The Texas Company, and not to become interested as principals in the purchase of such land, by an alleged agreement with plaintiff, McWhorter, the alleged prospective buyer, became principals in the prospective purchase of said land without having made full disclosure of all the facts in that regard to defendant, The Texas Company, or its authorized agent and without having received the consent or approval of defendant, The Texas Company, or its authorized agent; therefore, plaintiffs, Gilbert and Nelson, are not entitled, as a matter of law, to sue for and recover the commission for the sale of real estate sued for in said petition; and of this special exception defendants pray judgment of the Court.

"2. These defendants specially except to paragraph 3 of plaintiffs' third amended original petition wherein it is alleged that on or about September 10, 1945, defendant, The Texas Company, employed and appointed plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands of defendant, The Texas Company, on stipulated terms and conditions thereinafter set out, for the reasons that:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands owned by The Texas Company and did not

agree to or stipulate any terms or conditions upon which said defendant, The Texas Company, would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3 are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 3 are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"3. Defendants specially except to subsection (a) of paragraph 3 of plaintiffs' third amended original petition and especially to those allegations thereof to the effect that plaintiffs, Gilbert and Nelson, were employed to procure a purchaser for the land therein described; that E. W. Jones was duly authorized to sell the said land on the terms therein stated; that it was understood and agreed by and among all the parties that the statement that the three tracts of land contained a total of 126 acres was a mere guess or estimate and that before the sale was completed it would be necessary to have said land surveyed and that both commissions and sale price would be determined by the survey, for the reasons that:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show conclusively, as a matter of law, that no contract or agreement was entered into by defendant, The Texas Company, and plaintiffs employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands owned by defendant, The Texas Company; that E. W. Jones was not duly authorized to and did not purport to have the authority to sell the said land; and that there was no understanding and agreement in writing by and among the parties that the statement that the three tracts of land contained a total of 126 acres was a mere guess or estimate, and that before the sale was completed it would be necessary to have said land surveyed and that both commissions and sale price would be determined by the survey;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3(a) are erroneous conclusions as to the legal effect and import of said instruments; (c) the allegations of said paragraph 3(a) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"4. Defendants specially except to paragraph 3(a) of plaintiffs' third amended original petition and particularly to the allegations therein contained that the descriptive data contained in the letter of September 10, 1945, attached to said petition as a part of exhibit 'B', and the reference in said letter to map No. 15-49, were sufficient to identify without parol evidence the land allegedly offered for sale, and say that same is insufficient at law to state a cause of action against these defendants for the reason that the data set forth in the said letter of September 10, 1945, when construed with Map No. 15-49, shows, as a matter of law, that the description of the land referred to therein is so indefinite and ambiguous that the land therein referred to cannot be identified without the aid of

parol evidence, which renders the alleged contract void and unenforceable under the Statute of Frauds and article 6573a, R.C. S., 1925; and of this special exception these defendants pray judgment of the Court.

"5. These defendants specially except to paragraph 3(c) of plaintiffs' third amended original petition wherein they allege that defendant, The Texas Company, stipulated and agreed in writing that it would sell the land described in plaintiffs' petition for $400 per acre and that it was the mutual understanding and agreement that said price was an absolute price and that defendant, The Texas Company, neither requested nor desired plaintiffs, Gilbert and Nelson, to find a purchaser willing to pay more, for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that defendant, The Texas Company, had no understanding or agreement fixing an absolute price of $400 per acre and that the duty to use their best efforts to secure and submit to defendant, The Texas Company, the best possible offer was imposed by law upon Gilbert and Nelson;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3(c) are erroneous conclusions as to the legal effect and import of said instruments; (c) The allegations of paragraph 3(c) are unsupported and unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and

of creating confusion and prejudice in the minds of the jury; and of this special exception defendants pray judgment of the Court.

"6. These defendants specially except to paragraph 3(d) of plaintiffs' third amended original petition wherein they allege that the duration of Gilbert and Nelson's contract of agency was agreed and stipulated to be for the period from the date of the alleged contract (September 10, 1945, until November 1, 1945), and that the time of closing titles should be on or before said date, for the reasons that:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson, and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as agents to find and procure a purchaser for the lands owned by The Texas Company, and did not agree or stipulate any period of time for the duration of any such contract;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3(d) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of paragraph e(d) are unsupported and unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the

minds of the jury; and of this special exception defendants pray judgment of the Court.

"7. These defendants specially except to paragraph 3(e) of plaintiffs' third amended original petition wherein it is alleged that it was reasonably and necessarily implied from the actual and express agreement with respect to the alleged agency that after said plaintiffs procured a purchaser ready, willing and able to purchase on the terms and conditions therein stated and if such offer of purchase by the one procured by said plaintiffs was approved by defendant's Board of Directors, then immediately upon the approval of such Board of Directors, the contract should forthwith become absolute and binding upon both the purchaser procured by said plaintiffs and upon defendant company, and say that same is insufficient in law for the following reasons;

"(a) the instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson, and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson to find and procure a purchaser for lands owned by the Texas Company; that it did not agree to or stipulate any terms and conditions upon which defendant, The Texas Company, would sell any land belonging to The Texas Company; that there was no contract or agreement under which an offer of purchase should, upon approval by the Board of Directors of defendant, The Texas Company, forthwith become absolute and binding as a contract of sale or to sell lands of the Texas Company;

(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3(e) are erroneous conclusions as to the legal effect and import of said instruments;

(c) The allegations of paragraph 3(e) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception defendants pray judgment of the Court.

"8. These defendants specially except to paragraph 3(f) of plaintiffs' third amended original petition wherein it is alleged that it was stipulated in writing that the purchaser should be required to pay an initial deposit on the contract of not less than 10% of the total purchase price and say that the same is insufficient in law for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued upon therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said defendant, The Texas Company, would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter

of law, that the allegations of said paragraph 3(f) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of paragraph 3(f) are unsupported and unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception defendants pray judgment of the Court.

"9. These defendants specially except to paragraph 3 (g) of plaintiffs' third amended original petition wherein it is alleged that it was stipulated in writing that The Texas Company would not impose any restrictions or reservations with respect to oil, gas and other minerals, but only certain reservations with respect to the said The Texas Company's retaining a strip of certain width along the pipe line easement and say that the same is insufficient in law for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show as a matter of law that no contract or agreement was entered into by and between defendant The Texas Company, and plaintiffs, Gilbert and Nelson employing or appointing plaintiffs, Gilbert and Nelson as its agents to find and procure a purchaser for lands owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said defendant, The Texas Company would sell any lands belonging to the Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3 (g) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 3 (g) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"10. These defendants specially except to paragraph 3 (h) of plaintiffs' third amended original petition wherein it is alleged that all the terms and stipulations with respect to the payment of said purchase price consisting of the amount of cash payment and other and delayed payments and mortgages and liens to secure such payments were set forth and agreed upon in the instruments attached to said petition as exhibit 'B' and say the same is insufficient in law for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said de-

fendant, The Texas Company would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3 (h) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 3 (h) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in the case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"11. These defendants specially except to paragraph 3 (i) of plaintiffs' third amended original petition wherein it is alleged that it was stipulated in writing that the sales contract 'should be valid and enforceable with respect to both parties' and that the contract of sale and purchase should be binding on both parties 'with no forfeiture clause' allowing The Texas Company liquidated damages in the event of plaintiffs' failure to complete the purchase contract for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands

owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said defendant The Texas Company would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3 (i) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 3 (1) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"12. These defendants specially except to paragraph 3 (j) of plaintiffs' third amended original petition wherein it is alleged that defendant, The Texas Company, on October 3, 1945, for valuable consideration obligated itself not to make a sale of said property to any other prospective buyer except after reasonable notice to plaintiffs, Gilbert and Nelson, and without giving said plaintiffs an opportunity to meet any other party's offer that said defendant might have or receive and say the same is insufficient in law for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter of law, that no contract or agreement was entered into by and between defendant,

The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for the lands owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said defendant, The Texas Company, would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 3 (j) are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 3 (j) are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury;

"(d) The plaintiffs' petition, together with the instruments referred to in (a) next above, shows upon its face, as a matter of law, that there was no legal consideration of any kind or character moving from said plaintiffs to defendant, The Texas Company, to support the alleged promise and agreement or obligation on the part of defendant, The Texas Company; and of this special exception these defendants pray judgment of the Court.

"13. These defendants specially except to all of paragraph 4 of plaintiffs' third amended original petition wherein plaintiffs allege that while the alleged sales contract between plaintiffs, Gilbert and Nelson, and defendant, The Texas Company, was still in force, that plaintiffs, Gilbert and Nelson, were the efficient cause of procuring a purchaser of said acreage, to-wit, B. T. McWhorter, who was ready, willing and able to purchase such property on the identical terms and conditions allegedly stipulated in writing by defendant, The Texas Company, and for said purposes entered into a contract binding him absolutely to pay the purchase price and to comply with all the terms and con-

ditions stipulated by defendant, The Texas Company, for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, show, as a matter law, that no contract or agreement was entered into by and between defendant, The Texas Company, and plaintiffs, Gilbert and Nelson, employing or appointing plaintiffs, Gilbert and Nelson, as its agents to find and procure a purchaser for lands owned by The Texas Company and did not agree to or stipulate any terms or conditions upon which said defendant, The Texas Company would sell any lands belonging to The Texas Company;

"(b) The instruments referred to in (a) next above, show conclusively, as a matter of law, that the allegations of said paragraph 4 are erroneous conclusions as to the legal effect and import of said instruments;

"(c) The allegations of said paragraph 4 are unsupported and are unsupportable by the instruments referred to in (a) next above, and serve no legitimate purpose as a part of plaintiffs' said petition and are calculated to, and will probably have the effect of confusing the issues in this case and of creating confusion and prejudice in the minds of the jury; and of this special exception these defendants pray judgment of the Court.

"14. These defendants specially except to all of paragraphs 5, 6, 7 and 8 of plaintiffs' third amended original petition and particularly to those allegations thereof that plaintiffs disclosed orally to F. L. Wallace that plaintiffs, Gilbert and Nelson, desired to become joint purchasers with plaintiff, McWhorter, of said land provided the company and its officers had no objection thereto, and that acting upon the oral statement of said Wallace that defend-

ant company would give its consent thereto, plaintiffs, Gilbert and Nelson, entered into an agreement with McWhorter whereby they would become joint purchasers with said McWhorter, etc., and say that same is insufficient in law for the following reasons:

"(a) Such allegations are undoubtedly placed in said petition for the purpose of supporting parol testimony to be offered by plaintiffs to alter, change or amend the terms of the alleged contract in writing required by law to be the basis of a cause of action for commissions for the sale of real estate;

"(b) The plaintiffs have alleged and admitted that the letters or instruments attached to their said petition as exhibit "B" constitute in writing the complete contract with all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by The Texas Company of said plaintiffs, Gilbert and Nelson, and with respect to the sale and purchase of said real estate, and with respect to the promise and agreement upon which this action is brought, and such instruments constituting the alleged contract cannot be changed, altered or amended by parol evidence;

"(c) The instruments mentioned in (b) next above show conclusively, as a matter of law, that the said F. L. Wallace had no authority either express or implied to receive said disclosure for and on behalf of defendant, The Texas Company; or to consent for and on behalf of defendant, The Texas Company, to the violation by plaintiffs, Gilbert and Nelson, of the duty imposed upon them by law not to become joint purchasers of the land;

"(d) Plaintiffs' petition shows upon its face that said Wallace did not purport to receive such disclosure for or on behalf of defendant, The Texas Company, or to give the consent of defendant, The Texas Company, to the violation by plaintiffs, Gilbert and Nelson, of the duty imposed by law upon them not to become purchasers of such land; and of this special exception these defendants pray judgment of the Court.

"15. These defendants specially except to plaintiffs' third amended original petition and say that same is insufficient in law to state a cause of action against them for breach of contract of sale or to sell real estate or for tortiously conspiring to breach or inducing a breach of such contract for the following reasons:

"(a) The instruments attached to plaintiffs' said petition as exhibit 'B' and made a part thereof for all purposes, and which are sued on therein and are alleged and admitted by plaintiffs to show and constitute in writing the complete contract and all its terms and provisions made and entered into by and between plaintiffs and defendant, The Texas Company, both with respect to the employment by defendant, The Texas Company, of said Gilbert and Nelson and with respect to the sale and purchase of said real estate and with respect to the promise and agreement upon which this action is brought, do not, as a matter of law, constitute in writing a contract for the sale of or to sell real estate, as required by the Statute of Frauds in that such instruments are too uncertain, indefinite and ambiguous to designate the land sold or to be sold or to specify the terms, conditions and details of the alleged sale, and such instruments do not, as a matter of law contain the necessary elements in writing of a contract, and such instruments do not, as a matter of law, contain the necessary elements of a contract for the sale of land or real estate as is required by the Statute of Frauds;

"(b) The plaintiffs' said petition, together with the said instruments attached thereto and made a part thereof for all purposes, shows upon its face, as a matter of law, that the alleged contract or agreement allegedly obligating defendant, The Texas Company, to sell, convey and deliver the land described in plaintiffs' said petition to said plaintiffs, or any of them, is so indefinite, uncertain and ambiguous that same is void and unenforceable as a contract of sale or to sell real estate under the Statute of Frauds;

"(c) The instruments sued upon herein and alleged in plaintiffs' said petition to constitute in writing a contract obligating defendant, The Texas Company, to sell the land described in said petition to plaintiffs, or any of them, do not, as a matter of law, identify with the certainty required by law,

the land allegedly contracted to be sold under the alleged contract of sale as is required by the Statute of Frauds;

"(d) The plaintiffs' said petition shows upon its face that plaintiffs, Gilbert and Nelson, while they were, as alleged by them, acting as agents of defendant, The Texas Company, to find and procure a prospective purchaser for land belonging to defendant, The Texas Company, and, therefore in violation of the duty imposed by law in such cases to use their best efforts in behalf of their alleged principal, The Texas Company, and not to become interested as principals in the purchase of said land, allegedly made and entered into an agreement with plaintiff McWhorter (who had actual knowledge of all facts in connection with the alleged agency of plaintiffs, Gilbert and Nelson) under which plaintiffs, Gilbert and Nelson, became interested as principals in the anticipated purchase of said lands without having made, in writing, full disclosure to defendant, The Texas Company, or its authorized agent, of all facts in that regard and without having received the consent or approval in writing of defendant, The Texas Company, or its authorized agent, as is required by article 6573a, Section 22, R.C.S. Texas, 1925, to change, alter or amend the terms and conditions of the alleged written contract of agency; therefore, plaintiffs, nor any of them, are entitled, as a matter of law, to sue for and recover damages for the alleged breach of the obligation of defendant, The Texas Company, to sell and deliver such land or for damages for the alleged tortious conspiracy to induce the breach of said alleged obligation;

"(e) The plaintiffs' said petition shows upon its face that plaintiffs, Gilbert and Nelson, while they were, as alleged by them, acting as agents of defendant, The Texas Company, to find and procure a prospective purchaser for land belonging to defendant, The Texas Company, and, therefore, in violation of the duty imposed by law in such cases to use their best efforts in behalf of their alleged principal, The Texas Company, and not to become interested as principals in the purchase of said land, allegedly made and entered into an agreement with plaintiff, McWhorter,

(who had actual knowledge of all facts in connection with the alleged agency of plaintiffs, Gilbert and Nelson) under which the plaintiffs, Gilbert and Nelson, became interested as principals in the anticipated purchase of said lands without having made full disclosure to defendant, The Texas Company, or its authorized agent of all facts in that regard and without having received the consent or approval of defendant, The Texas Company, or its authorized agent; therefore, plaintiffs, not any of them, are entitled, as a matter of law, to sue for and recover damages for the alleged breach of the alleged obligation of defendant, The Texas Company, to sell and deliver such land or damages for the alleged tortious conspiracy to induce the breach of said obligation;

"(f) Plaintiffs' said petition shows upon its face that the entire cause of action for the recovery of damages for the breach of the alleged contract to sell land or for tortiously inducing the breach thereof as asserted in said petition is based upon the proposition that said instruments attached to said petition as exhibit 'B' and made a part thereof for all purposes constitute a valid, binding and enforceable contract for the sale of or to sell lands belonging to The Texas Company and described therein and that The Texas Company breached the alleged contract as a result of certain promises made by defendant, Roy Hayes, or his attorney, and that both defendants, The Texas Company and Roy Hayes, are liable to plaintiff for damages resulting from the breach of the contract; however, the petition, together with said instruments, shows conclusively, as a matter of law, that the Board of Directors of defendant company never approved the sale of the land on the terms and conditions offered by McWhorter, that no formal contract of sale was ever reduced to writing and signed by defendant, The Texas Company, as contemplated by defendant, The Texas Company, and plaintiffs binding the company to sell said lands to plaintiffs, or any of them, and that, consequently, no obligation ever rested upon defendant, The Texas Company to sell and convey the said land to said plaintiffs, and consequently, neither of these defendants is liable in damages to

said plaintiffs, or any of them, for failure and refusal of The Texas Company to sell and convey said lands to plaintiffs, or any of them, or for tortiously conspiring to induce defendant, The Texas Company to fail or refuse to sell and convey said land, and of this special exception these defendants pray judgment of the Court.

"16. These defendants specially except to paragraph 10 of plaintiffs' third amended original petition wherein they allege that on or about October 3, 1945, defendant, The Texas Company, changed or modified in writing the provisions of the alleged original non-exclusive contract of agency and that the effect of the writing referred to as the letter of October 3, 1945 Jones to F. N. Gilbert, was to obligate defendant, The Texas Company, not to sell the said land to any other prospective purchaser than plaintiff, McWhorter, without giving plaintiffs, Gilbert and Nelson, notice of the intention so to do and giving them a reasonable time to meet any other offer defendant, The Texas Company, might have or receive and to obligate defendant The Texas Company, to sell the said land to plaintiff, McWhorter, and to no other unless after receiving an offer from such other prospective purchaser on terms better than those of the McWhorter offer and giving plaintiffs, Gilbert and Nelson, notice of such offer plaintiff, McWhorter, failed to 'meet' such better offer, and say that same is insufficient in law for the following reasons:

"(a) The said Jones letter to Gilbert and Nelson dated October 3, 1945, is not, as a matter of law, subject to the construction placed thereon by plaintiffs as alleged in said paragraph 10;

"(b) Plaintiffs' said petition shows upon its face, as a matter of law, that there was no legal consideration moving from plaintiffs, or any of them to defendant The Texas Company, to support the obligations therein alleged to have been assumed by defendant, The Texas Company;

"(c) Plaintiffs' said petition shows upon its face, as a matter of law, that defendant, The Texas Company, performed to the extent required by law each and every of the obligations promised or assumed by defendant, The Texas Company, to be performed by it under the terms of the said letter of October 3, 1945; and of this special exception defendants pray judgment of the Court.

"17. These defendants specially except to paragraph 11 of plaintiffs' third amended original petition wherein it is alleged that defendants, The Texas Company and Roy Hayes, tortiously connived, conspired and concerted to induce defendant, The Texas Company, to breach its alleged obligations to pay to plaintiffs, Gilbert and Nelson, a commission for the sale of real estate and to breach its alleged obligations to sell and deliver the said property to plaintiff, McWhorter, or to plaintiffs, McWhorter, Gilbert and Nelson, and say that same is insufficient in law to state a cause of action against these defendants, or any of them, for tortiously inducing the alleged breaches of the alleged obligations for the reasons that:

"(a) Plaintiffs' said petition, together with the instruments attached thereto and made a part thereof for all purposes, shows upon its face, as a matter of law, that there was no enforceable contract or agreement under which defendant, The Texas Company was bound and obligated to pay Gilbert and Nelson a commission for the sale of real estate and there was no valid, binding and enforceable contract under which defendant, The Texas Company, was obligated to sell, convey and deliver said land to said plaintiffs, or any of them;

"(b) Plaintiffs' said petition shows conclusively upon its face that the alleged failure of defendant, The Texas Company, to pay plaintiffs, Gilbert and Nelson, the commission for the sale of real estate and the alleged failure of defendant, The Texas Company, to sell, convey and deliver to plaintiffs, or any of them, the said land could not have resulted from and did not result from any tortious act or conspiracy or conniving on the part of defendants, or either of them, to induce the breach of the alleged obligations; and of this special exception these defendants pray judgment of the Court.

"18. Defendants specially except to paragraph 13(a) of plaintiffs' third amended original petition and say that the same is insufficient in law in that the sum of $191,108.80 alleged to be the damages resulting to plaintiffs as the result of the alleged failure of defendant, The Texas Company, to sell, convey and deliver to plaintiffs, or any of them, the land described in plaintiffs' said petition, is conclusively shown upon its face to be the amount of the claimed profits allegedly expected and anticipated by plaintiffs resulting from the resale of said land after same had been subdivided and developed by said plaintiffs, and, as a matter of law, such profits are too uncertain, remote and speculative to be the measure of damages in this case for the following reasons:

"(a) It is a matter of common knowledge, of which the court may take judicial knowledge, that the subdivision, development and sale of land as lots for residential purposes is an uncertain and speculative enterprise and that the amount of profit to be anticipated from such an enterprise is so uncertain, remote and speculative that it is as probable that a profit would not have been made from such an enterprise as that a profit would have been made from such an enterprise;

"(b) The subdivisions, development and sale of land as lots for residential purposes is not the type of business or enterprise in which anticipated profits can be determined with the certainty required by law;

"(c) The subdivision, development and sale of lots for residential purposes, which plaintiffs alleged would have produced the profits for which they sue, is a new business within the meaning of law, and the anticipated profits from such a new business are not, as a matter of law, susceptible to proof with the certainty required by law to be the measure of damages;

"(d) The claimed profits which plaintiffs alleged were reasonably anticipated and for which they sue, are so uncertain, remote and speculative as not to be susceptible of that certainty of proof necessary to afford the foundation for any finding in plaintiffs' favor for the alleged damages; and of this special exception these defendants pray judgment of the Court.

"19. Defendants specially except to paragraph 13(b) of plaintiffs' third amended original petition and say the same is insufficient in law in that the sum of $92,000.00 alleged to be damages resulting to plaintiffs as the result of the failure of defendant, The Texas Company, to sell, convey and deliver to plaintiffs the land described in plaintiffs' said petition is shown upon the face of said petition to be the profit allegedly anticipated by plaintiffs resulting from the resale of said land without subdivision and development thereof, by said plaintiffs and that such anticipated profit is measured by the difference between the value of the land on the date of the alleged breach of the obligation to sell, convey and transfer to said plaintiffs the said land and the highest value of said land between the date of the alleged breach and the date of trial, and such is not the proper measure of damages in cases of this kind; and of this special exception these defendants pray judgment of the Court."

MURRAY, Justice.

The many questions of law which are presented by this appeal are thoroughly discussed in the extensive and carefully considered briefs of both parties. After a careful examination of the pleadings of both parties, we have concluded that the petition of the appellants fails to allege the making of a valid, binding contract on the part of the appellee, The Texas Company, to sell its land to McWhorter. After studying the correspondence between the parties, which is made a part of the petition of appellants, we are forcefully made aware of the difficulty present in determining whether such an exchange of letters as was here presented constitutes a contract or mere preliminary negotiations looking to the formation of a contract. In the old English case of Rossiter v. Miller, 3 App.

Cas. 1124, 6 English Ruling Cases, 174 this difficulty is well illustrated. In that case Lord Chief Justice Coleridge and two other of England's most distinguished judges were clear that there was no contract for want of a formal draft, Lord Chancellor Cairns and three other equally able and eminent jurists, were confident in a contrary opinion. In the case of Mississippi, etc., Steamship Co. v. Swift, 86 M. 248, 29 A. 1063, 1066, 41 Am.St.Rep. 545, Rossiter v. Miller, supra, and many other English cases are cited and examined, and the modern rule was expressed in the language of that opinion. "It is quite clear that, after all, the question is merely one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If, on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument, and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract. If, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. In determining which view is entertained in any particular case, several circumstances may be helpful, as whether the contract is of that class which are usually found to be in writing, whether it is of such nature as to need a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or an unusual contract, whether the negotiations themselves indicate that a written draft is contemplated as a final conclusion of the negotiations. If a written draft is proposed, suggested, or referred to during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract. Still, with the aid of all rules and suggestions, the solution of the question is often difficult, doubtful, and sometimes unsatisfactory." See the cases of Cranfill v. Swann Petroleum Co., Tex.Civ. App., 254 S.W. 582; Brillhart v. Beevcr, Tex.Civ.App., 198 S.W. 973 and 10 Tex. Jur. 54 for the application of this rule in this state. We have set out in the statement above the exact language of all the correspondence of the parties and for that reason no further quotation is necessary here. We believe that the language of all the letters and correspondence must be construed as preliminary negotiations between the parties which evidenced a definite intention that a formal written contract would be executed and that until such formal draft was made and executed and that unless and until this was done there was no obligation on the part of The Texas Company to sell the land to McWhorter. The appellants argue that by the contents of the letter dated October 19, 1945, from Jones, the agent of appellee, The Texas Company, to appellants Gilbert and Nelson, the statement that "Our executive committee has now approved the sale of the lands at the price and on the terms offered by Mr. McWhorter", The Texas Company thereby approved and accepted McWhorter's offer of purchase and that the said McWhorter contract to purchase immediately became a valid contract, legally binding both with respect to McWhorter and Gilbert and Nelson on the one hand and The Texas Company on the other. This letter of October 19, 1945 contains other statements, however, than the one quoted and relied upon by the appellants. The letter also negatives the idea that the The Texas Company had accepted McWhorter as a purchaser, although it had approved and was satisfied with the terms offered by him but it expressly states that The Texas Company was on the same day of the letter offering to sell the property to another person and intended to hold open further negotiations with McWhorter, through Gilbert and Nelson, until the other possible purchaser was disposed of. It does not appear from this letter that the minds of the parties had met in a binding contract on the part of the

seller to sell and the buyer to buy. See Foster v. New York & Texas Land Co., 2 Tex.Civ.App. 505, 22 S.W. 260.

With reference to the allegations that the appellee Roy Hayes tortiously connived, conspired and concerted to induce appellee The Texas Company to breach its alleged obligation to the appellants, we believe the trial court properly sustained the appellees' special exception contained in paragraph 11. Appellants allege that on October 19, 1945, or soon thereafter Hayes did various things which wrongfully caused The Texas Company to sell the property to him instead of to McWhorter. The letter of October 19, 1945, pleaded by the appellants, definitely states that at that time the appellee The Texas Company had decided to offer the property to some one other than McWhorter. It followed without question therefore that nothing occurring on or after October 19, 1945 could have induced or caused the decision of the appellee The Texas Company, and that portion of the petition was insufficient to state a cause of action for wrongfully inducing a breach of a contract. This point is of no great importance in the determination of this appeal, since we held above that no binding contract to sell to McWhorter was ever made.

The appellants Gilbert and Nelson also sought damages for loss of their brokers' commission for the sale of real estate. We must agree with the appellants that the correspondence alleges a contract between The Texas Company as owner and Gilbert and Nelson as real estate brokers for the sale of the land and the payment of a real estate brokers' commission of 5 percent. It is apparent that acting under such an agreement, as alleged by the appellants, they did find a buyer on the terms and conditions satisfactory to The Texas Company as vendor in the person of McWhorter, except for the alleged fact that Gilbert and Nelson, the agents, were to become the buyers of one-half interest in the land itself. Appellees by proper exception raised the point that Gilbert and Nelson as agents could not become the buyers under such an agency contract and thus make their principal liable to them for the brokers' commission. We have found this a most difficult question to decide. The petition of the appellants alleged that Gilbert and Nelson desired to acquire and McWhorter was willing to convey to them an interest in his contract to purchase and disclosed to one Wallace, Superintendent of the Port Arthur Refinery of The Texas Company, such intention and further alleged that said Wallace told them that The Texas Company did not have any objection to the acquiring by Gilbert and Nelson of such interest from McWhorter; they further alleged that the said Wallace had actual, implied, or apparent authority, and pleaded estoppel to deny such authority, to receive said disclosure and to consent that Gilbert and Nelson might act in the dual capacity as agent for The Texas Company and purchaser in the anticipated sale of the land. It is conceded by the appellants in their brief that a broker cannot, without the knowledge of his principal, become financially interested in the property to be sold unless he makes full disclosure thereof to his principal. The appellants argue that their allegations are sufficient in this regard, in that they allege that Mr. Wallace had actual or apparent authority to accept the disclosure made to him by them and to consent to their becoming partial buyers of the land. Their argument in their brief is largely concerned with the question of actual or apparent authority of Mr. Wallace. We decide the point upon other grounds, but in passing we observe that the correspondence between the parties does not disclose nor contain such authority on the part of Wallace at the time such letters were written. Since it is possible, however, that said Wallace may have been granted such authority by some means other than the letters presented by the appellants, we are unable to see, as a matter of law, that the allegation by appellants that Wallace did have actual authority to accept such consent is not a sufficient allegation of the existence of such authority.

We hold, however, that since the agency contract between The Texas Company and Gilbert and Nelson was effected by the correspondence between them, and because such a contract is required by our

statute to be in writing (Art. 6573a, Sec. 22, Vernon's Ann.Civil Statutes of Texas), any variation or change in such contract of agency must also be in writing. The granting of permission by the Texas Company to Gilbert and Nelson to alter and change their contract in such a material and fundamental respect as to allow them to become purchasers would have affected a material change in the nature of such contract of agency. In fact it has been held that "The law abhors double dealing, especially upon the part of one in whom a trust is reposed and confidence given; and when the agent turns aside from the plain paths of his agency and seeks individual advantage inconsistent with, and antagonistic to, the rights and interest of his principal, his authority is automatically destroyed and agency revoked * * *". Binder v. Millikin, Tex.Civ.App., 201 S.W. 239, 241. We believe that the duty the agent owes his principal not to become a buyer is written into the contract of agency by the law itself. The right and consent to change such a contract, therefore, could be granted only in writing, signed by an agent of The Texas Company. See recent case of Denman v. Hall, 144 Tex. 633, 193 S.W. 2d 515 containing a discussion of oral conditions and changes to contracts in writing. It is said there that the rule is that parol evidence cannot be received to establish an oral condition relating to the contract if the condition is inconsistent with the terms of the written instrument. This case deals with a contemporaneous oral condition, but nevertheless the principle of law announced also applies here. The general rule is well settled in this State that the terms of a written contract cannot be varied by oral testimony unless it is executed as the result of mistake, accident or fraud. See French v. Love, Tex.Civ.App., 281 S.W. 301 and cases cited therein. No consent in writing on the part of The Texas Company is alleged by the appellants. We therefore believe that the appellants, Gilbert and Nelson, by their allegations that they were to become a purchaser of a one-half interest in the lands, without any allegation of written consent thereto by The Texas Company, have failed to plead a cause of action for brokers' commission against the appellee The Texas Company.

It is seen from the correspondence alleged by the appellants that the refusal by The Texas Company to pay a brokers' 5 percent commission was not based on the proposed dual capacity of agent and purchaser by Gilbert and Nelson. So far as the pleaded correspondence shows, this had nothing to do with the failure on the part of The Texas Company to sell to McWhorter. We think, according to the allegations, that Gilbert and Nelson had complied with the terms of their brokerage contract in finding a buyer in the person of McWhorter, if Gilbert and Nelson had not, as alleged by them, become prospective purchasers themselves.

We believe that, with the extended statement set out at the beginning of this opinion, these observations dispose of the principal contentions of the parties. Since we believe that the rulings of the trial court were correct in holding that no allegations were made showing a contract to sell, nor a performance of the brokers' contract sufficient to make the vendor liable to the broker for commission, nor for tortious conduct in inducing a breach of contract, we believe that the judgment of the trial court was correct and it is accordingly affirmed.

COE, C. J., and WALKER, J., concur.