

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

February 23, 1965

Honorable E. Paul Banner
County Attorney
Hunt County
Greenville, Texas

Opinion No. C-389

Re: Whether persons entering
a state highway right of
way enclosed by an un-
authorized fence, can be
prosecuted under Article
1377b, Vernon's Penal Code,
and related questions.

Dear Mr. Banner:

Our opinion has been requested on five questions based
on the following facts as submitted by you.

"The owner of land adjacent to both sides of
a state highway bridge (which crosses the Sabine
River) . . . has built and maintains a stockpass
and private underpass underneath said highway
bridge."

Both tracts of land connected by the stockpass are si-
tuated on the north side of the Sabine River. The land being
used for the road and bridge has been acquired in part by
prescriptive easement created in favor of the public in gen-
eral for road purposes and in part by deed to the Texas High-
way Department. Permission to use the land underneath the
bridge for a stockpass was granted to the landowner in a
letter from the District Engineer of the Texas Highway Depart-
ment, but a written agreement has not been executed by the
parties.

While attempting to make a complete enclosure, you state
that a fence encloses the land on three sides and runs along
the side of the bridge and underneath the bridge. The fence
does not cross the river but "goes down to the water's edge,
and cattle cannot go up and down the river below the fence. . . .
The water stands 10 to 20 feet deep in the river - cattle
never cross it."

Gates have been placed under the bridge along the fence
for the "use of the Highway Department in making repairs to
the bridge, etc."

-1840-

"People go through the gates and some of them camp under the bridge, and they leave the gates open on many occasions, and they prevent the owner of the use of the easement for grazing, . . . and people fish from the bank, . . . and land boats on to the river."

You have further advised us that the portion of Sabine River involved in this matter comes within the purview of Article 4026b, Vernon's Civil Statutes, and is "non-navigable" in so far as all hunting and fishing rights on and along said stream are concerned, provided, however, that the State of Texas is not divested of whatever title it may have to the bed or waters of said stream.

In connection with these facts, you have requested the opinion of this office as to the following questions:

"1. Can an individual who is not an employee or agent on duty with the state highway department be prosecuted for trespassing under Article 1377b, Section 1 (c) of Vernon's Penal Code if they go upon the easement under such conditions as described above?

"2. Can an individual be prosecuted under Article 1352 for failure to close the gates above described that are provided for access for the highway department only?

"3. Can an individual be prosecuted for camping under a bridge on the highway, if there is not a fence or stockpass under such bridge?

"4. Does a flat, metal stock gate, the type that you drive across on a road, constitute part of a fence to form an enclosure for the purpose of prosecution under Article 1377b, Section 1 (c)?

"5. Can an individual be prosecuted for crossing a stockpass and crossing over the easement to land a boat or fish on the banks of a stream along such easement, when such stockpass is fenced and enclosed under Article 1377b, Section 1 (b)?

Hon. E. Paul Banner, page 3 (C-389)

We will answer your questions in the order they were sub-mitted.

Question No. 1 involves Article 1377b, Section 1 (c), which reads as follows:

"No person shall enter or attempt to en-ter upon the enclosed land of another with-out consent of the owner, proprietor, lessee, or person in charge thereof, and camp or attempt to camp or in any manner encroach upon or damage such land."

Article 6674n-1 Vernon's Civil Statutes provides that "The Texas Highway Department may enter into written agree-ments with owners of the lands abutting or adjoining the lands acquired by the Department for right of way for any highway, farm to market road, or other roadway in the State Highway System, under the terms of which such owners of abutting or adjoining lands may be authorized to use and cultivate such portions of the right of way as may not be required for immediate use of the department." . . . "Such agreements shall be executed by the owners of the adjoining or abutting lands and the State Highway Engineer or his au-thorized representative." (Emphasis added.)

The language of the statute indicates that the agree-ment is to be in writing and signed by both parties, and that the agreement could not be authorized until such formalities were observed. Gilbert v. Texas Co., 218 S.W.2d 906 (Tex. Civ.App., error ref. n.r.e.); "If the reduction of the agree-ment to writing is thus made necessary, an assent to the writing as a sufficient one must also be manifested; this manifestation commonly consists of signing and delivery." Corbin on Contracts, Vol. 1, Section 32, p. 126. The letter from the District Engineer referred to above does not con-stitute a written agreement as contemplated by the statute. We therefore hold under the facts stated, that the landowner does not have the lawful authority to place a fence on the highway right of way and that a person who crossed the en-closure in order to reach the right of way would not be in violation of Article 1377(b) Section 1 (c) Vernon's Penal Code. The answer to Question No. 1 is "No."

Question No. 2 refers to Article 1352, Vernon's Penal Code, which is set forth as follows:

"If any person shall break, pull down or injure the fence of another without his consent, or shall wilfully and without the consent of the owner thereof open and leave open any gate leading into the enclosure of another, or shall knowingly cause any hogs, cattle, mules, horses or other stock to go within the enclosed lands of another without his consent, or shall tie or stake out, or cause to be tied or staked out to graze within any enclosed lands not his own and without the consent of the owner any horse, mule or other animal, he shall be fined not less than ten nor more than one hundred dollars, and in addition thereto may be imprisoned in jail not exceeding one year."

The gates in question are gates leading to a stockpass located on a highway right of way without proper authority for placing them there, and in our opinion, it would not be a violation of this statute if they were left open without the consent of the owner of the fence and gate. The answer to Question No. 2 is "No."

We are unable to answer your third question as you did not state whether the land upon which the individual camped was within the enclosure of another. Article 1377b, Section 1 (c).

Question No. 4 concerns the nature of an "enclosure" required under Article 1377b, Section 1 (c) as defined in (d).

The pertinent portion of (c) is quoted as follows:

"No person shall enter or attempt to enter upon the enclosed land of another. . . ."

Article 1377b, Section 1 (d) defines enclosed land as follows:

"For the purpose of this Act enclosed land shall mean such lands as are used for agriculture and grazing purposes or for any other purpose, and enclosed by structure for fencing either of wood or iron or conbination thereof or wood and wire, or partly by water and stream canyon, brush, rock or rocks, bluffs or island."

The term "fence", in a statute in reference to the duty of a railroad company to fence its tracts, includes cattle guards. 16A Words & Phrases 5 and cases cited therein.

The Court in <u>Burch v. State</u>, 67 S.W. 500 (Tex. Crim. 1902) stated:

> "Webster defines a fence to be 'to enclose with a hedge, wall or anything that prevents the escape or entering of cattle; to secure by an enclosure.'"

We conclude under this language that a fence which is partly constructed by using a metal cattle guard or flat metal stock gate comes within the definition of "enclosed land" as contemplated by the statute, and we answer Question No. 4 "yes".

Question No. 5 refers to Article 1377b, Section 1 (b), which is quoted below:

> "No person shall enter or attempt to enter upon the enclosed land of another without consent of the owner, proprietor, lessee, or person in charge thereof, and catch or attempt to catch fish from any pond, lake, tank, stream or any body of water therein."

The enclosed land in question is partially composed of highway right of way, and we answer Question No. 5 "No", in so far as it relates to the facts presented for our consideration.

## S U M M A R Y

Under the facts stated when individuals pass through an enclosure constructed partially on a highway right of way without proper authority for said construction, in order to reach the right of way, the individuals are not guilty of violation of Article 1377b, Vernon's Penal Code.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: C. L. Snow, Jr
C. L. Snow, Jr
Assistant Attorney General

CLS:ms

Hon. E. Paul Banner, page 6 (C-389)

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Milton Richardson
Paul Phy
Grady Chandler
George Black

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone